CASE 65—PETITION EQUITY—APRIL 30.

# Duncan, Trustee, &c., v. Central Passenger Railway Company.

APPEAL FROM LOUISVILLE CHANCERY COURT.

1. DEEDS—LIMITATION AS TO USES.—A condition or limitation in a deed restricting or limiting to particular uses the property conveyed is valid, but may be waived or abandoned by the subsequent conduct of the grantor, so that a court of equity will not interfere to prevent its violation.

J., owning unimproved city property, laid it out in lots, the "plan" being to sell the lots only for residences. He sold and conveyed several of the lots to A., the deed providing "that no business, manufacturing or other than dwelling-houses shall be built upon said property." J. afterward sold other lots to different persons without any restrictions whatever. Appellee, having purchased the lots conveyed to A., commenced the erection of a building on the property to be used as a station for its street railway, the erection of which J. seeks to enjoin. *Held*—That J., by selling the remainder of the property without any restrictions, has put it out of his power to carry out his plan of using the property for residences only, as a part of which plan the restriction in the deed to A. was inserted; and he can not, therefore, call upon a court of equity to prevent others from destroying the plan.

2. A CONTRACT THE FULFILLMENT OF WHICH BECOMES UNREASONABLE will not be enforced at the instance of a party who, by his own conduct, has produced such a result.

3. INJUNCTION.—While the mere fact that there is a threatened breach of a contract will not authorize an injunction, yet, if the cause of action be continuous and the nature of the impending damage such as not to be susceptible of proper assessment by a jury, but matter of conjecture merely, then injunction will lie..

ALEX. P. HUMPHREY FOR APPELLANT.

1. Appellant Johnston, being the owner of the lots on both sides of the newly laid out Highland Avenue, and desiring to prevent a stable or other objectionable building on the corner lot at the entrance to the avenue, expressly refused to sell the lot at all to the street car company; and when he sold it to Allman required the restrictive clause in the deed against any other use than as a residence. Allman purchased in bad faith, for the secret benefit of the street car company;

and it took a deed from Allman, but with full notice of the restriction. The conduct of appellee shows it contemplated a wrong from the beginning. Such a covenant is perfectly valid and binding on the grantee, and those who purchase from him with notice; it qualifies the estate; it is a limitation upon its use; and is enforceable by injunction in equity. (Cowell v. Springs Co., 100 U. S., 57; Stems v. Dorman, 25 Ohio St., 583; Trustee v. Lynch, 70 N. Y., 440; Tulk v. Moxhay, 11 Beavan, 571; 2 Phillipps, 774; Hill v. Miller, 3 Paige, 254; Linzie v. Mixer, 101 Mass., 513; Dorr v. Harihan, 101 Mass., 531; Barrow v. Richard, 8 Paige, 352; Atlantic Dock Co. v. Leavitt, 54 N. Y.)

2. Damage to Johnston is abundantly shown. It is proven that the building of the stable of appellee at the entrance of the avenue would not only greatly lessen the salability and market value of Johnston's lots for residence purposes, for which it is peculiarly suitable; but will produce disagreeable odors, noises, sights, flies, etc., etc., and injure it for all purposes.

3. But no evidence of damage need to be offered, in a case like this. Courts of equity will presume an injury from such a wanton and flagrant violation of contract, and will not hear defendant say that the contract meant nothing, or was an idle thing, the breach of which would cause no damage. It is not a question of the amount of damage, but is a question of contract right. The parties had the right to determine for themselves how the land should be occupied, irrespective of pecuniary gain or loss; and equity will enforce their contract. (Trustee v. Lynch, 70 New York, 440; Dickinson v. Grand Junction Canal, 15 Beavan, 290; Commonwealth v. P. & C. R. R., 24 Pa. St., 160; Beckwith v. Howard, 6 Rhode Island, 1.)

4. The fact that Johnston before or afterwards conveyed away other lots along Highland Avenue without exacting similar restrictions, was no waiver or abandonment or release of the covenant in the deed to the corner lot in controversy. It was only deemed necessary to protect the corner lot, for there was no street car line contemplated or allowed on Highland avenue, and a stable would only be practicable on the corner lot. The interior lots are unfitted for business purposes, and there would be no temptation to build any thing but dwelling-houses there. The purchase of one of the interior lots by the street car company, pending this suit, was merely for effect, to influence this litigation. It would not build its stable there, off the line of its road. (Cook v. Martin, 49 Pa. St., 293; Wilson v. Hart, L. R., Chancery Appeals, 463.)

5. The cases of the British Museum, Peek v. Matthews, Sayers v. Collyer, and Roper v. Williams, relied on by appellee, do not apply here. They were cases where the owner of an estate, having conveyed divers lots by deeds, each of which contained a similar covenant, had

Duncan, Trustee, &c., v. Central Passenger Railway Company.

excused open, frequent and flagrant breaches of this covenant, by so many persons as to break the plan; and had then endeavored to enforce it, not in good faith, but from some malicious motive, against a particular person. See them explained in Gorman v. Chapman, Law Reports, 7 Chancery Appeals, 278.

6. There was no laches or acquiescence on the part of Johnston, for he commenced this suit for an injunction as soon as the appellee began to build its stable. Nor has Johnston excused or waived any violation of any covenant made with him respecting these lands. A covenant or restriction like this is not waived by the owner failing to exact a similar restriction from vendees of other lots. (Clark v. Martin, 49 Pa. St., 293; Wilson v. Hart, L. R., 1 Chancery Appeals, 463.)

7. It is no answer to this argument to speculate that other persons owning other lots might in the future build other than residences on their lots, and thus do a similar injury to Johnston. Those persons will not be violating a contract, as appellee is. And there is no evidence or reason to show that they will ever do any thing that Johnston will disapprove of. The stable at the entrance of the street is the great thing to be feared. The appellee has covenanted not to build this stable there; whatever others may attempt to do, on other lots. (Wilson v. Hart, L. R., 1 Chancery Appeals, 463.)

JOHN MASON BROWN and GEORGE M. DAVIE for appellee.

1. When the restrictive covenant was inserted by Johnston in the deed, it was in pursuance of a general plan and design, a map of which Johnston had caused to be made, by which, under the impulse of the "flush times" then prevailing, all his strip of land was to be laid out in suitable lots and confined to elegant residences only. But the "panic" of 1873 came soon after, rendering the residential plan hopeless and impracticable, and Johnston abandoned it, sold the greater number of the remaining lots to others, without reserving any restrictions in the deeds; and those other purchasers and their vendees have ever since had the full right to build stables, soap factories, machine shops, or any thing else they might choose. This abandonment of the harmonious residential design caused the restriction in controversy to cease to be applicable, according to its true intent and purpose. Johnston's own acts and change of plans having defeated the object of the covenant, a court of equity will not now enforce it, but will leave him to his remedy, if any he have, at law. (Duke of Bedford v. Trustee British Museum, 2 Mylne & Keene, 552; Roper v. Williams, 1 Turner & Russell, 18; Peek v. Matthews, Law Reports, 3 Equity, 515; Gorman v. Chapman, L. R., 7 Chancery Appeals, 278; Sayres v. Collyer, L. R., 24 Chancery Division, 180; High on Injunctions, sections 1158, 1159; Hilliard on Injunctions, pages 711, 712; Waterman Specific Performance, section 176; Duncan v. Central Pass. R. R. Co., 6 Ky. Law Reporter, 426.)

2. When the deed was accepted with the restrictive covenant in it, the grantee was willing to accept it, and to respect it, because it was to be expected that the residential plan would be carried out for the benefit of that lot, as well as of the others. That common arrangement has, by Johnston's acts, been put an end to, and the beauty and benefit contemplated from uniformity of design has been destroyed.· Johnston having placed it out of his, or appellee's, power to preserve the residential scheme, will not be assisted in equity to enforce the restriction, which has now lost its meaning and purpose. (Hilliard on Injunction, page 711; Peek v. Matthews, L. R., 3 Equity, 515.)

.3. An injunction to enforce a contract is a violent, summary and extraordinary remedy, to be cautiously used; and will only be decreed in a case which 'appeals strongly to equity, where there is no adequate remedy at law, where there is a clearly made out case of great or irreparable injury, and a full conviction on the part of the court of its urgent necessity. A doubtful right or a mere possibility of injury will not warrant an injunction. (High on Injunctions, section 22; Dumesnil v. DuPont, 18 Ben. Monroe, 804; Code, section 272.)

4. Equity does not ordinarily attempt to remedy breaches of contract by injunctions, but leaves them .to law; otherwise the chancellor would soon be overburdened with controversies, properly legal. (High on Injunctions,. sections 406, 407.)

5. No damage has been shown to Johnston. He lives in New Orleans, and no longer owns any lots adjacent to this, or on the same side of the street. None of his vendees nor adjacent owners object or complain. The stable will not be a nuisance. Those adjacent owners know there will be no damage; and he has no longer any special interests close enough to object. (Wood on Nuisances, page 841.)

6. It is a settled rule that where the granting of the injunction will accomplish no practical good to plaintiff, or where the harm it would do defendant would be relatively far greater than any benefit it will do plaintiff, equity will leave them to the courts of law. Appellee now owns by purchase the lot between the one in controversy and Johnston's; and if enjoined from building on the corner lot could build on that nearer to Johnston. (Kerr on Injunctions, 209; Russell v. Farley, 105 U. S., 438.)

7. The fact that none of the other vendees of Johnston have yet built stables, etc., on their lots, does not affect the question. They have the right to do it at any time,'and equity will not proceed, where, from plaintiff's own acts, the decree may be rendered useless. Nor is it true that Johnston only considered it necessary and sufficient to bind the corner lots; for he afterwards conveyed the opposite corner to Bradas without any restriction, and Bradas may build a stable there, or sell to appellee. (Russell v. Farley, 105 U. S., 438.)

If a contract, because of changed circumstances, becomes unjust

Duncan, Trustee, &c., v. Central Passenger Railway Company.

and oppressive; or if to require its performance becomes unreasona-
ble, because of acts of the plaintiff, equity will not specifically enforce
it. (High on Injunctions, section 106; Waterman Specific Perform-
ance, section 176; Sayres v. Collyer, L. R., 24 Chancery Division,
180.)

JUDGE HOLT DELIVERED THE OPINION OF THE COURT.

Wm. P. Johnston was the owner of twenty acres of
land lying between Baxter and Barrett Avenues, in the
city of Louisville. In 1870 he made a plat of it, in
which it was laid out in lots with a wide avenue run-
ning through the middle of it, from Baxter Avenue to
Barrett Avenue, known as "Highland Avenue." The
owner believed that the lots would sell best for resi-
dences, and the purpose was to confine them to this use.
This was the plan. In October, 1873, he sold and con-
veyed lots Nos. 60, 61 and 62, which lie at the corner
of Baxter and Highland Avenues, to one Allman. He
had previously declined to sell them to the appellee,
The Central Passenger Railway Company. Allman
conveyed them to it in December, 1873, for the price
at which he had purchased.

The deed from Johnston to Allman contained this
restriction: "It is hereby agreed between the first and
second parties, that no business, manufacturing or other
than dwelling-houses shall be built upon said property,
and no alley shall run through said property; and no
building of any kind shall be put thereon fronting any
other way than on Highland Avenue or the said twenty-
four feet alley."

The deed from Allman to the railroad company, how-
ever, embraced no such condition; but the one to him
was of record, and the company moreover had actual
notice of the restriction in the grant to him. It occu-

vol. 85.—34.

pies no better attitude, therefore, than it would if it had been embraced in its own deed.

Such negative easements or predial servitudes, as they were called in the Roman law, are valid. They qualify the estate granted. The limitation on the use enters into the consideration for the contract, and should, therefore, by common justice, be unheld, if not unlawful. It is not void as in restraint of trade, because it is not a contract in general restraint of it, but merely prevents the use of a particular piece of property in a certain way. No undue but a limited restriction upon the use merely is imposed. Conditions forbidding alienation to particular persons, or for a limited time, or to particular uses, are not in violation of law. (Staines v. Dorman, 25 Ohio St., 580 ; Trustees v. Lynch, 70 N. Y., 440 ; Cowell v. Springs Co., 100 U. S., 55 ; Tulk v. Moxhay, 11 Beavan, 571.)

The appellee in 1881 began the erection of a brick building upon its lots thus acquired, to be used as a station for its street railway, which extends along Baxter Avenue, and also to shelter its cars, and as a stable for its stock.

The appellant Johnston, relying upon the restriction in the deed to Allman, enjoined the appellee from building it. There is no question of laches upon his part, because he acted in limine as to the work, and enjoined it as soon as it was begun ; but the inquiry is presented whether there has been such a change in the condition of the property, or such conduct upon his part, as prevents him from asking the aid of a court of equity.

There are, as yet, no buildings upon any of the lots. In fact, "Highland Avenue," has never been improved,

or, in fact, made a street. It must be recollected that the sale to Allman was in October, 1873.

Prior to that time Johnston had sold a lot to one Miller; also one to a man by the name of Mueller, and had mortgaged a portion of the land. He sold a lot to one Bradas in 1874; another to Susan Hepburn in 1876; another to one Piggatt in 1880; and in 1881 he sold a large portion of the land to John M. Caperton, and mortgaged all the balance of it which he still owned, and which was not already encumbered by mortgage.

The location and different sales will be best understood from the following plat:

None of the deeds or mortgages made by the appellant Johnston contained any restriction whatever as to use, save that to Allman.

The Hepburn lot has changed ownership several times since its sale by Johnston, and now belongs to the appellee.

The parties now complaining own no land adjoining the lots of the railroad company, or any upon that side

of Highland Avenue. They have no interest in any, save that yet belonging to Johnston, and which is under mortgage. Indeed, he is the only complainant in interest, because the other appellants are his wife and his trustee.

The owners of the lots adjacent to those owned by the company are not complaining, and have the right to erect any thing they please on their lots, short of a nuisance. Indeed, the company has a right to build a stable or any other structure upon the Hepburn lot, as it now belongs to it, and is not subject to any restriction.

It is urged that the conduct of Johnston in thus selling the other lots without any restriction should be held to be an abandonment or waiver of the restriction in the Allman deed; and that by so doing he has produced such a state of circumstances or condition as to the property that no such injury can accrue to him as authorizes its prevention by injunction.

This writ is an extraordinary remedy. Its aid can not be invoked save in a clear case of impending injury. There must be an urgent necessity, and this must be clearly shown. A mere possibility of injury does not authorize it. (Dumesnil v. DuPont, 18 B. M., 804.) The mere fact that there is a contract between parties does not authorize it, because there is a remedy for a breach of it by an action at common law for damages; and if every contract could be enforced in equity, the chancellor would be overburdened. Our Code of Practice authorizes its issual where great or irreparable injury is about to accrue. This, however, is not to be confined to cases of heavy pecuniary loss. If so, the

person who has but little would often be comparatively remediless.

If the cause of action be continuous, and the nature of the impending damage such as not to be susceptible of proper assessment by a jury, but a matter of conjecture merely, then an injunction will lie. Otherwise, the remedy would often be inadequate; and it is in such cases that equity aids the poverty of the law, and rather regards the right of the party than the amount of damage which may accrue. (Staines v. Dorman, *supra*.) Cases in support of this rule might be cited without number. Indeed, there is high authority holding that no damage whatever need be shown; but that the right existing by virtue of the contract may be enforced without regard to the question of resulting damage. (Dickinson v. Canal Co., 15 Beavan, 290; Commonwealth v. Railroad Co., 24 Pa. St., 160; Trustees v. Lynch, 70 N. Y., 440.)

We need not, however, determine the extent of the rule, because there is another question which is fatal to the appellant's claim.

It is evident that the restriction in the Allman deed was inserted to enable the appellant Johnston to carry out his plan of selling the property for residences. The then design was to have no buildings erected there save for residential purposes. This was a general plan, and to prevent its symmetry from being marred, the covenant in the Allman deed was inserted. The evidence is conclusive that this plan was abandoned. Johnston subsequently sold the most of the property without any restrictions whatever.

The grantees have the right to erect any character of

building, and use it for any purpose, save a nuisance, which the law, and not the conveyances to them, inhibits. They may build stables, tan-yards, soap factories or structures of any other character, save those within the ban of the law.

This is the result of Johnston's own conduct. He has put it out of his power to carry out his plan or general scheme of using the property for residential purposes only; he can no longer prevent others from destroying the plan; and by his own acts even the appellee has a perfect right to build a car stable upon the Hepburn lot, now owned by it, and which adjoins the lot as to which the restriction was inserted in the Allman deed, years before this action was instituted. It is impossible, therefore, to carry out the theory or general plan which led to the insertion of the restriction named; and Johnston himself has produced this state of case. It is true that no other buildings have yet been erected; but they may be at any time; and a court of equity should not lend its aid to one looking to a certain end, when it may be defeated at any time by reason of the previous conduct of that person. Its action under such circumstances would be futile and barren of results.

It is urged, however, that Johnston had a right to suppose that the other vendees would not erect any objectionable buildings, if the owner of the lot at the entrance to the avenue was restricted from doing so. It, however, appears that the year following the sale to Allman, the appellant sold the lot immediately opposite, and which fronts on both Baxter and Highland Avenues, to Bradas, without any restriction whatever as to

its use ; and the conclusion is irresistible that the plan existing in his mind, and which led to the insertion of the restriction now in question in the Allman deed, was abandoned.

The general scheme has by the appellant's own permission and conduct been so changed, and the condition of the property so altered, that it is liable to be defeated at the pleasure of others, and may, in fact, be regarded as impossible of fulfillment. The original plan, owing to his own action, is no longer practicable. The restriction has been thus rendered inapplicable in its true intent and meaning ; as much so as if the plaintiff had himself erected buildings destructive of the object of the covenant ; and in such a case a court of equity will not interfere.

In support of these views, we refer to Hilliard on Injunctions, page 711 ; High on Injunctions, section 1158 ; Roper v. Williams, 1 T. & R. Eng. Ch'y. Reps., page 18, and Duke of Bedford v. Trustees of British Museum, 2 M. & K., 552.

A contract, the fulfillment of which becomes unreasonable, will not be enforced at the instance of a party, who by his own conduct has produced such a result. After treating it as void, he can not appeal to a court of equity to treat it otherwise.

We must regard the present state of the property, and viewing it in this light, ought a court of conscience to interfere ? The power of Johnston to control the premises is now gone. He has voluntarily let the matter pass out of his hands ; and having done so, it is no longer consonant with the principles of equity to interfere, and he can not, to the prejudice of others, now

ask a court of equity to aid him. Great injury would likely result to others, and no correlative benefit to him.

The most of the cases cited by his distinguished counsel did not turn upon the question of waiver or abandonment, while some of them are exceptional in fact, but not in law. Indeed, the rule above indicated appears to be admitted, but it is denied that this case falls within it.

We think otherwise; and the judgment is affirmed.