## THE STAR BREWERY COMPANY

*v.*

## WILLIAM PRIMAS.

*Filed at Mt. Vernon November 11, 1896.*

1. COVENANTS—*what language will create a negative covenant.* When land is conveyed with a prohibition in the deed of its use for certain purposes, the deed not containing the words "upon condition" or any provision for re-entry in case of a breach, the prohibitory clause is a negative covenant.

2. SAME—*what will prevent the enforcement of a negative covenant.* To prevent the enforcement of a restriction in a deed against sale of liquor, there must be such a change in the character of the neighborhood, caused by the grantor or those claiming under him, as to defeat the purpose of the restriction or to seriously injure the property rights of the grantee if enforced.

3. INJUNCTIONS—*when equity will enjoin breach of a negative covenant.* A restrictive clause in a deed which provides that the grantee shall not use the conveyed premises for saloon purposes so long as the grantor retains ownership of adjacent property, is a valid negative covenant, and equity will enjoin its breach by the grantee or subsequent grantees with notice.

4. WAIVER—*proof must be clear to show waiver of breach by acquiescence.* Where a grantor has repeatedly refused to release a negative covenant in a deed, though offered money to do so, testimony must be clear and convincing to prove a waiver thereof verbally or by acquiescence merely.

5. PLEADING—*when variance between the allegation and proof is not material.* Whether a restrictive clause in a deed is a condition is for the court to determine, and the fact that a bill seeking to enjoin its breach alleges such clause to be a condition when it is in fact a negative covenant, will not prevent complainant's obtaining proper relief.

*Star Brewery Co.* v. *Primas,* 59 Ill. App. 581, affirmed.

APPEAL from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Madison county; the Hon. BENJAMIN R. BURROUGHS, Judge, presiding.

This is a bill, filed by appellee against the appellant company and one Edward Johnson, to enjoin them from in any manner using or authorizing the use of certain

premises for saloon or dram-shop purposes, so long as the complainant owns the house known as the "Bluff Saloon." Answer and replication were filed, and decree was rendered by the circuit court, granting a perpetual injunction in accordance with the prayer of the bill. This decree has been affirmed by the Appellate Court; and the object of the present appeal is to review such judgment of affirmance.

In their opinion the Appellate Court make the following statement of facts:

"The appellee was the owner of a saloon building and premises he had purchased from one Anna Hanslick, situated in Glen Carbon, known as the 'Bluff Saloon,' which in February, 1891, he leased to one William Winters, who ran the saloon until November, 1891, when appellee leased it to the St. Louis Brewing Association, who sub-let to the firm of Martin & Paul for saloon purposes and they so used it. On the 18th day of August, 1891, the appellee sold and conveyed to William Winters a vacant lot situated near the said 'Bluff Saloon,' which deed contained the following clause: 'The premises hereby conveyed are not to be used for saloon or dram-shop purposes so long as the grantor owns the house formerly owned by Hanslick.' Winters proceeded to erect a large house on said lot, which was afterwards, in May and June, 1892, used by him for saloon purposes, but he was restrained from continuing in the business on the complaint of the St. Louis Brewing Association and Martin & Paul, with whom Winters had contracted, on their purchase of his fixtures in the 'Bluff Saloon,' not to keep a saloon within one mile of the 'Bluff Saloon.' The Star Brewery Company desired to purchase the Winters property for the purpose of establishing a saloon, and having learned of the restriction clause in the deed conveying it to Winters, sought to obtain a written release from appellee, which he refused to give. Winters also sought to obtain such release, and offered to pay $30 therefor, but appellee un-

qualifiedly refused to grant it. Notwithstanding this refusal the Star Brewery Company purchased the property of Winters on the 20th day of May, 1893, and established one Johnson in the saloon business there in July thereafter. On the 13th of September the bill in this case was filed by appellee to restrain such use of the property, he still remaining the owner of the 'Bluff Saloon.'"

KNISPEL & ROPIEQUET, for appellant:

If it appears that the original plan has been abandoned or that the character of the neighborhood has so changed as to defeat the purpose of the covenant and thus render its enforcement unreasonable, it will not be enforced. *Duke of Bedford* v. *Trustees,* 2 M. & K. 552; *Sayres* v. *Collyer,* 28 Ch. Div. 103; *Page* v. *Munay,* 46 N. J. Eq. 325; *Roper* v. *Williams,* T. & R. 18; *Peck* v. *Mathews,* L. R. 3 Eq. 515; *Trustees* v. *Thatcher,* 87 N. Y. 311.

A restrictive covenant will not be enforced if the land restricted cannot be profitably used under the covenant, and if the covenant does not fulfill the purpose for which it was created. *Jackson* v. *Stevenson,* 156 Mass. 496.

The clause of the deed in question is a restriction, merely. It is not a mutual covenant, for a valuable consideration. Such restrictions are not favored. *Eckhart* v. *Irons,* 128 Ill. 568.

If a party make a declaration or do any act to induce another to do what he would not otherwise do, or to invest his capital on the faith of such declaration or act, he will be estopped to deny the truth of his declaration or just effect of his act. *Talcott* v. *Brackett,* 5 Ill. App. 50; *Hefner* v. *Vandolah,* 57 Ill. 520; *Kinnear* v. *Mackay,* 85 id. 96.

If the condition is once waived it is gone forever, and cannot be enforced on a subsequent breach. *Andrews* v. *Lenter,* 32 Mo. 394; *Muston* v. *Gladwin,* 6 Q. B. 953; *Daugherty* v. *Matthews,* 35 Mo. 520; *McKildoe* v. *Darracott,* 13 Gratt. 278; *Murray* v. *Harway,* 56 N. Y. 337; *Porter* v. *Merrill,* 126 Mass. 534; *Hubbard* v. *Hubbard,* 97 id. 188.

A forfeiture for breach of condition subsequent may unquestionably be waived by acts as well as by express agreement. 2 Washburn on Real Prop. 4, note 19; *Guild* v. *Richards,* 16 Gray, 309.

Knowledge of and acquiescence in a breach, by failing to move for a forfeiture within a reasonable time, may certainly amount to a waiver, where the grantee or a sub-purchaser is induced by such acquiescence to expend money in valuable improvements upon the premises, upon the principle of estoppel. *Ludlow* v. *Railroad Co.* 12 Barb. 440; *Kentucky* v. *Contract Co.* 9 Bush, 202.

TRAVOUS & WARNOCK, and M. MILLARD, for appellee:

It is not necessary to show an irreparable injury, upon the principle that the owner of land selling or leasing it may insert in his deed or contract just such covenants or conditions as he pleases touching the mode of enjoyment. *Steward* v. *Winters,* 4 Sandf. Ch. 588; *Coal Co.* v. *Schmisseur,* 135 Ill. 378; High on Injunctions, (3d ed.) sec. 1142.

Appellant stands in no better position than does its grantor, Winters. Whatever rights it has were taken "with notice, by the record of the deed, of all its reservations in favor of appellee," and are subordinate to his. *Gallagher* v. *Herbert,* 117 Ill. 170; Devlin on Deeds, sec. 710; High on Injunctions, sec. 1144.

The defense relies upon a waiver. A waiver is the intentional relinquishment of a known right, and there must be both knowledge of the existence of the right and an intention to relinquish it. *Perin* v. *Parker,* 126 Ill. 206.

Mr. CHIEF JUSTICE MAGRUDER delivered the opinion of the court:

The question in this case relates to the force and effect of the restrictive clause contained in the deed executed on August 18, 1891, by the appellee to Winters, and also to the extent to which that clause is binding, if at all, upon the appellant holding under a deed executed

to it by Winters on May 20, 1893. The clause in question is as follows: "The premises hereby conveyed are not to be used for saloon or dram-shop purposes so long as the grantor owns the house formerly owned by Hanslick." The deed from appellee to Winters refers to a conveyance previously made on January 19, 1891, by Anna Hanslick to appellee; and it is conceded, that the house formerly owned by Hanslick is what is known as the "Bluff Saloon." The tract purchased by appellee from Anna Hanslick was about four acres, of which the premises sold by him to Winters, and which Winters conveyed to appellant, are a part. The "Bluff Saloon" was situated upon the part of the four acres retained by appellee, and not sold to Winters.

The deed from Winters to appellant does not contain the clause, but the deed from appellee to Winters was on record when appellant bought the premises and accepted a deed thereof. In addition to the constructive notice afforded by the record, appellant had actual notice that the clause in question was in the deed to Winters, because both appellant and Winters tried to induce appellee to execute a written release of the restriction imposed by the clause, and offered to pay him money to do so, before appellant made its purchase of the premises from Winters together with the building erected thereon by Winters.

The house called the "Bluff Saloon" is still owned by appellee. With the knowledge of such ownership, and with the further knowledge of the restrictive clause in question and of appellee's refusal to make a written release of the restriction, appellant bought the property for the purpose of using it for saloon purposes, and in July, 1893, placed Johnson in possession thereof, who at once opened a saloon in the building built thereon by Winters, and from July 19, 1893, up to the time of the commencement of this suit, kept a saloon there.

Under these circumstances is there any reason why an injunction will not lie to restrain a use of the property, which is contrary to the terms of the clause in question?

The first reason urged by appellant why the relief asked for should not be granted is, that the bill calls the clause in question a condition, whereas it is alleged to be a mere restriction.   The bill alleges, that the premises in question were conveyed by appellee to Winters upon condition that they should not be used for saloon purposes as long as complainant remained the owner of a house formerly owned by Anna Hanslick, known as the "Bluff Saloon," situated on another portion of the tract bought from her by appellee; that said "Bluff Saloon" is used by appellee's tenants for saloon and dram-shop purposes; that such tenants pay a higher rent by reason of the agreement to prevent the use of any other land owned by appellee for the same purpose; and that the premises deeded to Winters are so located with reference to the "Bluff Saloon," as to make a saloon business prosecuted on said premises a competing business, thereby reducing the rental value of the "Bluff Saloon."

Conditions, besides being express or implied, may be precedent or subsequent.   A precedent condition is one, which must take place before the estate can vest or be enlarged, and if land is conveyed upon a precedent condition, the title will not pass until the condition is performed.   A subsequent condition is one, which operates upon an estate already created and vested and renders it liable to be defeated.   A deed upon condition subsequent conveys the fee when it is executed, but the fee passes subject to the contingency of being defeated as provided in the condition, the grantor having the power of re-entry upon condition broken; and if there is a breach of the condition, the estate continues in the grantee until defeated by actual entry.   Whether a condition is precedent or subsequent depends upon the intention of the parties. At common law, no one but the grantor or his heirs could

enter for a breach of a condition subsequent. (2 Washburn on Real Prop.—5th ed.—marg. pp. 445-447; Martindale on Conveyancing, sec. 124; 2 Devlin on Deeds, secs. 958, 959; 3 Am. & Eng. Ency. of Law, p. 423, and cases cited).

There is nothing in the language of the deed under consideration to indicate, that it is a deed upon condition precedent or subsequent. The words, "upon condition" are not used. There is no provision for re-entry in case of a breach of the covenant. Such a provision usually indicates an intent to create a condition subsequent. (*Kew* v. *Trainor*, 150 Ill. 150). Conditions, especially conditions subsequent, are not favored in law because they tend to defeat estates, and courts are inclined to construe clauses in deeds as covenants rather than conditions. (*Gallaher* v. *Herbert*, 117 Ill. 160). The clause here in the deed to Winters, though it is not a condition within the legal definition of that term, is a negative covenant. Equity will interpose by injunction to prevent the breach of negative covenants annexed to leases or deeds. The prohibition of their breach is indirectly an enforcement of their specific performance. Equity will interfere by injunction to prevent the breach of an express negative covenant, even though no substantial injury is caused by such breach. It will also so interfere, even though the damages, if any, may be recoverable at law. The reason is, that the owner of land selling or leasing it may insist upon just such covenants as he pleases touching the use and mode of enjoyment of the land. He has a right to define the injury for himself, and the party contracting with him must abide by the definition. (*Steward* v. *Winters*, 4 Sandf. Ch. 587; 2 High on Injunctions,—3d ed.— secs. 1142, 1158; *Consolidated Coal Co. of St. Louis* v. *Schmisseur*, 135 Ill. 371).

It can make no difference, that the bill in this case calls the restrictive clause a condition, instead of calling it a negative covenant. The substance of the clause is set forth in the bill, and whether or not it is a condition

or a covenant is a matter for the court to determine. As it is a negative covenant, there is no reason why its breach may not be enjoined.    There is nothing illegal in the nature of the contract itself.    It is not void as being in restraint of trade, because it is not a contract in general restraint of trade, but merely prevents the use of a particular piece of property in a certain way.    Restrictions imposed upon the use which are not undue, but limited only, are not in violation of law.    (*Duncan* v. *Central Pass. Railway Co.* 85 Ky. 525).    While it is true that, where land is conveyed in fee, restrictions in the use are not favored, yet it is also true that, where the intention of the parties is clear in the creation of restrictions upon the use of a grantee, courts will enforce the same.    (*Hutchinson* v. *Ulrich*, 145 Ill. 836).

The second reason why it is insisted, that appellee is not entitled to the relief prayed for, is that there has been such a change in the circumstances as to render the restriction useless and of no value to appellee.    The change in circumstances here referred to is the fact, that, when the deed to Winters was executed, there were only two saloons in the neighborhood, whereas, at the time of the hearing, there were eight saloons in the neighborhood.    The idea of counsel for appellant seems to be, that, inasmuch as there are other saloons not upon the land sold by appellee to Winters, which compete with the "Bluff Saloon" situated upon the portion of the land retained by appellee, therefore the competition of the saloon operated by appellant's tenant upon the land sold to Winters will do appellee no harm.

The proof shows, as matter of fact, that the saloons, started since the sale to Winters, are located at long distances from the "Bluff Saloon," one at a distance of 700 or 800 yards, one at a distance of 1150 yards, one at a distance of 300 yards, one at a distance of a mile, etc.; and that the saloon in the building, erected by Winters on the land now owned by appellant, takes away trade

from the "Bluff Saloon," and is an injury to it. The contention, that the establishment of the additional saloons renders the covenant useless and of no value to the appellee, is not supported by the evidence.

There are authorities, referred to by appellant's counsel, which hold that, if the character of the neighborhood has so changed as to defeat the purpose of the covenant, and thus render its enforcement unreasonable, it will not be enforced. But, in most cases where this doctrine has been applied, it will be found that two elements exist which are not found in the present case, namely: First, the change in circumstances has resulted from some act or acts of the grantor in the deed or of those holding under him; second, the enforcement of the covenant will work a serious injury to the property or property rights of the grantee in the deed, or of the party against whom it is sought to enforce the covenant.

It is, as a general thing, where the acts of the grantor, or those deriving their title under him, have altered the character and condition of the adjoining lands so as to make the restriction of the covenant inapplicable according to the intent and spirit of the contract, that courts of equity refuse to interfere by injunction to prevent a breach of the covenant, and leave the parties to their remedy at law. (*Duke of Bedford* v. *Trustees*, 2 Myl. & K. 552; *Page* v. *Murray*, 46 N. J. Eq. 325; *Duncan* v. *Central Pass. Ry. Co.* 85 Ky. 525; *Peek* v. *Matthews*, L. R. 3 Eq. 515; *Roper* v. *Williams*, 1 Turn. & Russ. 18; 2 High on Injunctions,—3d ed.—sec. 1158; *Sayers* v. *Collyer*, L. R. 28 Ch. Div. 103). But, in the present case, the new saloons were not upon appellee's land, nor was appellee, nor any one holding under him, responsible for their existence. The change produced by opening the new saloons was not his act, nor the act of any party claiming through or under him.

Where the change in the condition of the surrounding property is such that a performance of the covenant in

the deed would injure the grantee's property, or make it yield less profit, or make it incapable of yielding any profit, the covenant will not be enforced as being unreasonable and oppressive.   Where, for instance, the covenant required that only dwelling houses, or dwelling houses of a certain price, should be erected, and that the premises should not be used for trade or business, and the neighborhood had so changed that only dwelling houses of a cheaper kind, or houses for trade or business, would be profitable, the court refused to enforce by injunction a performance of the covenant.   (*Page* v. *Murray*, *supra; Jackson* v. *Stevenson*, 156 Mass. 496; *Trustees of Columbia College* v. *Thacher*, 87 N. Y. 311; *Amerman* v. *Deane*, 132 id. 355; 2 Devlin on Deeds, sec. 943).   Here, however, it cannot be said, that the establishment of the new saloons will make the performance of the covenant by appellant any more injurious to its interests than was the case before the new saloons were established.

The proof does not show, nor is it a fact, that, if appellant complies with the contract by not using its premises for saloon purposes, its property will yield less profit, or be injured in any way, by reason of the change in the circumstances brought about by the opening of other saloons in the neighborhood.   The change in the character of the neighborhood cannot have the effect of making a compliance with the covenant unreasonable or oppressive.   On the contrary, it would seem, that a violation of the covenant by the use of the premises for saloon purposes would be attended with more injury after than before the opening of the new saloons by reason of the competition produced by the latter.

In the third place, it is contended by appellant, that appellee has acquiesced in the use of the premises by his grantees for saloon purposes, and is estopped by his acts from denying their right to so use such premises.   Acquiescence cannot be inferred from delay in the taking of steps to prevent the violation of the covenant, because

the facts do not show any very great delay. Johnson, as tenant of Winters, opened a saloon on the premises in question and operated it during a part of the months of May and June, 1892, but he was at once enjoined by other parties, with whom Winters had agreed not to run a saloon for five years within a radius of one mile of the "Bluff Saloon;" and, as the use of the premises for the forbidden purpose, was thus stopped by others, it was unnecessary for appellee to adopt proceedings of his own for the purpose of stopping it. Johnson, as tenant of appellant, again began to use the premises for saloon purposes on July 19, 1893, but in less than two months thereafter, to-wit: on September 13, 1893, appellee filed this bill to enjoin the violation of the covenant.

Where a party, seeking to enforce a covenant not to carry on a trade in a house, which had been violated by the use of the house for a beer-shop, knew for a period of three years, that the house was used for a beer-shop, and had himself bought beer at the shop, it was held that he had acquiesced in such violation of the covenant, and had lost the right to enforce it by injunction or by suit for damages. (*Sayers* v. *Collier, supra.*) But, here, there was not only no delay, with knowledge of the violation, for any such period as three years, but proceedings were instituted to restrain such violation within a very short time after the forbidden use was resorted to.

Nor can it be said, that the entry of appellee into Johnson's saloon in May or June, 1892, and the fact, that he drank some beer there at that time, amount to acquiescence or waiver. A waiver is the intentional relinquishment of a known right, involving both knowledge of the existence of the right and an intention to relinquish it. (*Perin* v. *Parker*, 126 Ill. 201). That appellee did not intend to relinquish his right to enforce the covenant by what he did in 1892 is shown by the fact, that he refused in May, 1893, to execute a written waiver or release of the restriction, when requested to do so by both

Winters and appellant.  That Winters and appellant did not regard the restriction as having been waived, or its violation acquiesced in, by appellee by anything done before May, 1893, is evident from the fact that they endeavored at that time to procure a release, thereby treating the covenant as being in force.  Whether the right to equitable relief is affected by acquiescence depends upon the circumstances of each case, and the facts may be inquired into in order to determine the validity of such a defense.  (*Jackson* v. *Stevenson, supra*).  "An owner may neglect to object to infractions of restrictions to some extent without losing his right to enforce the restrictions when they more clearly and seriously affect him."  (Idem).

We concur in the following statement made by the Appellate Court in their opinion in this case:  "We do not find there was a waiver of the restriction.  It is not natural that appellee should unqualifiedly and firmly, on different occasions, after earnest persuasion and the offer of a money consideration, refuse to release such restriction in writing and at the same time verbally consent to release the same without any consideration, when the tendency would be to depreciate the rental value of his property."  The grounds urged by appellant against the enforcement of the covenant are not well taken.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*