## Greer et al. v. Bornstein.

(Decided Dec. 2, 1932.)

B. F. WASHER, EDWIN ABRAHAM and P. H. SAVAGE for appellants.

LAWRENCE S. GRAUMAN for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

Prior to February, 1913, a corporation known as the Cherokee Court Land Company, acquired a tract of land in the extreme suburbs of the city of Louisville, and situated east of south from Bardstown road, and as a part of the tract it acquired a narrow strip from the main body to the Bardstown road for entrance purposes. It platted all the land so acquired by it into lots, boulevards, streets, and alleys, and had the plat recorded in the county court clerk's office, and named the addition "Cherokee Plaza." The acquired neck or

strip of land projecting from the main body of the plat to Bardstown road was partly appropriated to the making of an elaborate and costly curving entrance which was designated "Boulevard Napoleon," and from it other avenues and streets on the plat were reached. The boulevard did not consume all of the acquired strip extending out to the Bardstown road, and the remainder was divided into lots shown on the recorded plat. Lot No. 3 is a part of that strip and it is the only one in the plat that touches Bardstown road. It is owned by defendant and appellant, Frankie S. Greer, who also owns lot No. 4, which adjoins lot No. 3 on the south, and appellee and plaintiff below, Ale Bornstein, owns lot No. 5, which adjoins No. 4 on the south.

After the recording of the plat, the Cherokee Court Land Company had a public sale of lots in Cherokee Plaza, which was extensively advertised by posters, circulars, in newspapers, and otherwise. In all of such advertisements it was expressly stated, with emphasis, that all improvements on any of the lots of Cherokee Plaza "shall be used for residence purposes only," and all residence buildings to be erected on any of the lots "shall sit back at least 30 feet from the front property lines." Those restrictions did not appear upon the recorded plat, but they were inserted in every deed made by the company to any of the lots, the most of which it sold, and all of its vendees who later conveyed their lots inserted the same restrictive covenants in their deeds and which was and is true with reference to the chain of title of both the plaintiff and defendant in this case.

A short while before the institution of this action by plaintiff against defendant in the Jefferson circuit court, the latter entered into a contract with her co-defendant and appellant, Consolidated Poster Advertising Company, whereby she gave to it the right and privilege to erect on that portion of lot No. 3 owned by her bordering on Bardstown road, a large and conspicuous advertising board, and when this action was instituted that structure was about to be built; whereupon plaintiff, as the owner of lot No. 5 in Cherokee Plaza, brought this equity action against her and her licensee, or lessee, to enjoin them from erecting the structure contemplated, on the ground that if they did so it would be a violation of the restrictive covenants contained in defendant's deed, and which inured to

plaintiff's benefit, because of his ownership of one of the lots in Cherokee Plaza.

Defendants resisted the relief sought by plaintiff in his petition upon grounds argued by their able counsel in this court, and which, as stated in the brief, are: "Appellant relies on four major contentions, (a) no showing by appellee of any general building scheme; (b) changes in the neighborhood making the lot in question available only for business and of no value for other purposes; (c) appellee's showing that he has a complete remedy at law, and (d), in the absence of an established building scheme, the restrictions of a deed are limited as to benefits to the grantor and his remaining property." The evidence consisted mostly in affidavits which the parties agreed might be read as the depositions of the affiants, and a stipulation of facts contained in the record. Upon submission the court sustained the prayer of plaintiff's petition, and perpetually enjoined defendants as therein requested, and from that judgment they prosecute this appeal.

The individual defendant has her residence on lot No. 4 adjoining that of plaintiff, and the stipulation of facts shows that in the erection of those residence buildings the requirements of the restrictive covenants in their deeds were strictly observed, and the proof also shows the same to be true as to improvements by all of the respective owners of the various sold lots from Cherokee Plaza, and which is by far the larger portion of them; the cost price of such residence buildings averaging about ten or twelve thousand dollars. The facts that we have stated with reference to the sale advertisements containing a notice of the restrictions were not contained in the stipulations, but they are uncontradictedly proven by all the testimony introduced and heard at the trial, and it is conceded that the contemplated erection of the billboards would constitute a violation of the restrictions under our opinion in the case of Starck v. Foley, 209 Ky. 332, 272 S. W. 890, 891, 41 A. L. R. 756, and which counsel for defendants do not dispute. They do, however, strenuously insist that the facts do not establish that the corporation in exacting and inserting in all its deeds to lots such restrictive covenants did so for the protection of a general building scheme of the corporation which it contemplated, nor that by doing so it intended to or did provide for the protection of each owner of a lot in the

platted subdivision. Differently stated, the contention is, that the proof fails to establish such a general scheme on the part of the corporation as to give to each lot owner therein the right to enforce the restrictions as against any other lot owner.

Counsel, as we interpret their briefs, concede that if such a scheme did exist and was proven in this case, then the restrictive covenants did inure, not exclusively to the benefit of the particular grantor, but to all lot owners in the subdivision, although, in apparent contradiction thereof, they contend that their client, Mrs. Greer, had neither actual nor constructive notice of any such scheme if it existed, or if it should be conceded that it was established by the proof in the case. In support of that position they argue that, since the recorded plat contained nothing with reference to the restrictions, their client did not possess constructive knowledge of it, and they then urge that she testified that she had no actual knowledge of it, and, therefore, possessing no knowledge of any character of such general scheme, the covenant contained in her deed is only enforceable by her vendors in her chain of title, and that, since plaintiff is not one of them, and, since the alleged violated covenant, under their contention, does not inure to his benefit, he may not maintain this action. But, whatever may be the law elsewhere, this court, in the recent cases of Highland Realty Co. v. Groves, 130 Ky. 374, 113 S. W. 420; Crutcher v. Moffett, 205 Ky. 444, 266 S. W. 6; Anderson v. Henslee, 226 Ky. 465, 11 S. W. (2d) 154, and Biltmore Development Company v. Kohn, 239 Ky. 460, 39 S. W. (2d) 687, as we interpret the opinions, held to the contrary, and enforced such covenants at the behest of a vendee of other lots in the subdivision when the proof showed that there was a general scheme and purpose of those who originally platted the land and sold the lots to protect all other lots by the requirement of the covenants.

However, if actual notice of such scheme (in the absence of constructive notice) was necessary to enable one lot owner to enforce the covenant against another for the protection of his own lot, then we conclude that the evidence in this case was sufficient to establish the scheme and to impute knowledge of it to Mrs. Greer, and which conclusion is drawn from the facts undisputedly proven in the case, and which every other person in the vicinity appears to have known, but

which defendant testified she did not know. Those facts consisted in the advertisements referred to, and the ever present one of universal observance of the covenants by every other owner of the lots in the subdivision, even by the plaintiff herself up to the date when she attempted to commit the violation complained of. Under similar facts and circumstances we held in the Anderson and Biltmore Cases, supra, that the covenants inured to the benefit of all lot owners and that they could maintain actions against others to prevent their violation. We therefore conclude that contention (a) in the excerpt supra, from the defendants' brief, is without merit.

In support of contention (b), it is argued that the testimony establishes that there has been wrought radical and fundamental changes in the neighborhood of the development (the platted territory in this case) whereby plaintiff's lot has become available only for business and not residence property, and that she, as its owner, should be relieved from the obligations of the covenant in her deed, since not to do so would damage her in a much greater amount than its enforcement would benefit plaintiff, so much so as to render its observance by her so inequitable as to authorize the court to relieve her therefrom, and some cases are cited partially or entirely sustaining that contention. But an examination of them clearly reveals that they contain facts fundamentally different from those contained in this case; chief among which is that the changes and alterations producing such a result all occurred and took place on some of the lots of the platted development and were acquiesced in so as to render them permanent and to thereby materially curtail, if not to destroy, the original purpose intended to be accomplished by the restrictions; thereby applying principles analogous to the doctrine of waiver.

In this case the testimony shows that in remote but not immediately contiguous parts of the neighborhood of plaintiff's lots, some business enterprises have sprung up, and further east from her lot billboards are erected, but they are all some distance away from her lot, although their construction might tend to make her lot available for business purposes, and perhaps less valuable for residence purposes. However, such alterations and changes cannot be said to have such a fundamental effect as to entitle defendant to rely on this de-

fense, even if it could be made available when the changes relied on were erected and constructed only on property adjacent to the development but not upon any part of it.

We held in the case of Mechling v. Dawson, 234 Ky. 318, 28 S. W. (2d) 18, 19, under facts more convincingly supporting the same contention, that it was not available and could not be relied on, even though the changes or part of them had occurred upon or to a part of the development. We deem it unnecessary to recite the facts of that case, since a reading of the opinion therein clearly demonstrates that the changes in conditions therein relied on were more favorable to defendant therein, because more strongly supporting the defense than do the facts of this case. The trial court before delivering his opinion in this case personally viewed the premises involved in the Mechling Case, and he in his opinion determined that it was a stronger case for defendant than this one, and an examination of the two records convinces us that he was correct. In disposing of the same contention in that case, after reciting the substance of the testimony in support thereof, we said: ''On these facts we conclude that the chancellor properly held that business had not invaded the restricted area; that the slight business development on Frankfort avenue contiguous to the territory in question had not worked so substantial and fundamental a change as to make the restriction bear unequally upon the various lot owners; that it was still possible to maintain the residential character of the subdivision; and that the situation was one calling for the interposition of a court of equity. Sandusky v. Allsopp, 99 N. J. Eq. 61, 131 A. 633; Swan v. Mitshkun, 207 Mich. 70, 173 N. W. 529. * * * As said in Laverack v. Allen, 130 A. 615, 617, 2 N. J. Misc. 637: 'Changes in the residential neighborhood depend upon their number and character, and if, as in this case, they do not interfere with the enjoyment by lot owners of the benefit of the neighborhood as a place of residence, or show a general intention to abandon such plan, they are not material.' ''

That statement is eminently applicable to the facts of this case, and it is in accord with the rulings of other courts and text-writers. There is no pretense that any owner of any lot in the development has in the remotest manner violated the same restriction in their

deeds, and therefore no change in the situation, fundamentally or otherwise, has occurred to or upon any of the lots contained in the recorded plat of Cherokee Plaza, and from all of which we conclude that the principle of law relied on in support of this contention is not available under the developed facts.

The domestic cases to which we have referred furnish a complete answer to contention (c), and particularly is that true as to the Foley Case, supra, where the erection of the same sort of structure was held to be a violation of the same character of restrictive covenant in defendant's deed. The injunction to prevent it that was sought in that case was granted by the trial court and which was affirmed by this one. The same may be said as to the Crutcher, Hensley, Mechling, and Kohn Cases. If contention (c) is available in this case to defeat the injunctive relief sought, because plaintiff has an adequate remedy at law, then the same contention should have also prevailed in those cases, but which this court denied. Counsel's argument in support of this contention seems to proceed on the idea that if it is possible to compensate a plaintiff by giving him damages, then his right to an injunction to prevent the occurrence of the damage is unavailable to him in every case. But, the general rule, denying the right to injunctive relief where an adequate remedy at law is available, cannot receive such a strict or narrow application in a case like this. The damages growing out of a violation of a restrictive covenant of the nature and quality here involved are usually not measureable in terms of money. The freedom from obstructions to view, the marring of the symmetry of the general plan of the development, the encroaching of disturbing influences to the quietude of the surroundings and the beneficial effects of the other inviting conditions, are difficult to measure by the yardstick of the dollar, and because of the recognition of those facts, equity in such cases, and other like ones, will interfere to preserve the status, rather than to relegate the complaining party to his action at law, which, after its relief is exhausted, leaves the disturbing conditions still existing (and which in all probability are perpetual) and directs the injured complainant to be content and satisfied with a few additional shekels. The facts of the cited cases in which the principle of law contended for was applied were most materially different from those in this case and

catalogues them in an entirely different class from the instant one. We, therefore, conclude that contention (c) is without merit.

Contention (d) has in effect been heretofore disposed of, since we have already determined the existence of an "established building scheme" by the owners of Cherokee Plaza at the time it made and recorded its plat of its subdivision. A narration of the testimony in this case as to the changed condition of the neighborhood, with a more extended discussion of the legal questions and of the cases relied on by the respective parties, has not been made, since it would be of benefit to no one and would unduly lengthen our opinion. But, if we had done so, we would have portrayed a case no more supporting the defenses herein relied on than did the facts in our cited opinions; and which we conclude is all that is necessary in the disposition of this case.

Wherefore, for the reasons stated the judgment is affirmed.