**Herbert FRANKLIN et al., Appellants,**

v.

**Paul W. MOATS et al., Appellees.**

Court of Appeals of Kentucky.

Dec. 17, 1954.

Kammerer, McPherson & Petrie, Norris McPherson, Louisville, for appellants.

C. Maxwell Brown, Louisville, for appellees.

SIMS, Justice.

Appellants, Herbert Franklin and wife, Marie, own lots 11 and 12 fronting on the east side of Taylor Boulevard in Louisville, as shown by the plat of the Edgehill Subdivision. They acquired these lots subject to certain restrictions, one of which is "lots three through nineteen shall be used for residence purposes only". They brought this action in equity to have this restriction adjudged unenforceable as to their lots, as they allege the purpose for which the restriction was imposed has ceased to exist. The chancellor in an exhaustive and well-reasoned opinion sustained a demurrer to the petition as amended. Appellants declined to plead further, the petition was dismissed and they appealed.

A plat in the record shows the Edgehill Subdivision consists of 69 lots, of which 1 to 19 front on the east side of Taylor Boulevard. All of these 19 lots, except 1 and 2, are covered by certain restrictions, one of which is that they may be used only for "residence purposes", while the other 50 lots front on three avenues intersecting Taylor Boulevard and have certain re-strictions placed on them but are not covered by the residential restriction. On the unrestricted lots 1 and 2 there is a drive-in ice cream stand. Taylor Boulevard is a wide thoroughfare, the west side of which is occupied by commercial buildings. The Edgehill Subdivision was opened in 1924, at which time all lots abutting Taylor Boulevard were residential and suburban property.

The petition as amended pleaded the above facts and in addition thereto averred there has been no uniform or consistent attempt to restrict the subdivision for residential purposes; that there have been substantial changes in the character of the subdivision in the immediate neighborhood converting it from an outlying suburban residential district into a closely built-up commercial area; that in 1951 lots 11 and 12 were zoned by the City of Louisville as "commercial E"; that some owners of property in the subdivision signed a petition asking that certain lots on the east side of Taylor Boulevard be zoned for commercial use; that owners of other lots made no protest to such zoning; that appellants have a binding contract for the sale of their lots upon the condition that this building restriction be declared void and unenforceable and they will lose the benefit of such contract unless this building restriction is cancelled.

It is insisted by appellants that as all 69 lots in the subdivision were not covered by the building restriction, there is no general scheme or plan applicable to the entire subdivision and the restriction is not enforceable on subsequent grantees, citing Duncan v. Central Passenger Ry. Co., 85 Ky. 525, 4 S.W. 228, 9 Ky.Law Rep. 92, and such foreign cases as Donahoe v. Turner, 204 Mass. 274, 90 N.E. 549, and Sandusky v. Allsopp, 99 N.J.Eq. 61, 131 A. 633.

The answer to this argument is that 17 of the 19 lots on Taylor Boulevard are covered by this building restriction and the remaining 50 lots on the other streets, not so prominent as Taylor Boulevard, bear the burden of certain other restrictions and

easements. In order to carry out a general scheme or plan for a whole subdivision it is not necessary that every lot therein, regardless of the prominence of the street upon which it faces, must bear the same restrictions as all other lots in it.

■ Appellants argue that even if it be admitted there was a general plan of restrictions, there is a change in the character of the neighborhood sufficient to defeat the purposes of the covenant and to make it unenforceable, citing 14 Am.Jur. "Covenants" § 305, p. 648 and § 307, p. 650; Goodwin Bros. v. Combs Lumber Co., 275 Ky. 114, 120 S.W.2d 1024; Annotations, 54 A.L.R. 826; 85 A.L.R. 991; 103 A.L.R. 738. From these authorities we gather the rule to be, that for equity to refuse relief against a breach of restrictive covenants, the change of conditions must be so great as clearly to neutralize the benefits of the restriction to such an extent as to defeat the purpose of the covenant.

■ We agree with the learned chancellor that the situation disclosed in this record has not reached such a state. None of the owners of the 17 lots (3 through 19) has abandoned or waived this covenant. Nor does the fact that the west side of Taylor Boulevard contains commercial buildings neutralize the benefits of the restrictions on the east side of this wide, thoroughfare, which the chancellor said was a natural barrier between commercial and residential districts. There is always a line or point where commercial and residential districts must join one another.

While the action of the Zoning Commission in putting lots 11 and 12 in a commercial class indicates a substantial change in the district from residential to commercial purposes, yet it does not have the force of destroying the restrictive covenant. Goodwin Bros. v. Combs Lumber Co. 275 Ky. 114, 120 S.W.2d 1024, 1025. As said in the Goodwin case, such action by the Zoning Commission "coupled with other evidence, makes it to appear conclusively that the change in conditions *in that part of the Ransom Subdivision in which the lot in question is located* is so great as

clearly to neutralize the benefits of the restrictions and to defeat the purpose of the covenant". (Our emphasis.) In the case at bar there is nothing in the record to show a change of conditions in the subdivision. The facts here distinguish it from the Goodwin case. There, the restriction had been disregarded "over a period of years by the owners of most or all the lots in the group", while here none of the owners of the restricted lots has disregarded the covenant and the change in conditions from residential to commercial use was outside of the Edgehill Subdivision. In Mechling v. Dawson, 234 Ky. 318, 28 S.W.2d 18, and Greer v. Bornstein, 246 Ky. 286, 54 S.W.2d 927, it was written that the changes must take place in the subdivision and be acquiesced in by the property owners therein so as to render the changes permanent and to thereby materially curtail, if not destroy, the original purpose intended to be accomplished by the restriction before a court of equity will declare the restriction unenforceable.

The judgment is affirmed.