Leo M. RIEGER et al., Appellants,

v.

W. Roy WESSEL et al., Appellees.

Court of Appeals of Kentucky.

Nov. 28, 1958.

Daniel B. Boone, Henry A. Triplett, Louise B. Dahl, Louisville, for appellants.

A. Scott Hamilton, E. Preston Young, Louisville, for appellees.

STEWART, Judge.

This is an action for a declaration of rights wherein plaintiffs, W. Roy Wessel and Estelle W. Vincent, sought in circuit court to have seven lots owned by them freed from the burden of certain restrictive covenants. The chancellor granted the relief prayed for and adjudged there was no imposition of restrictions upon the lots in controversy. This appeal is from that ruling. We shall refer to the parties throughout as "plaintiffs" and "defendants".

The case was tried on an agreed statement of facts, a summary of which shows that one Lula Swinney West originally owned two adjacent tracts of land in that part of Jefferson County which is now known as Shively. Under date of June 27, 1927, she, with her husband joining in, conveyed 7.635 acres out of the larger tract to L. J. Wessel and his wife by deed which was duly recorded in Deed Book 1289, page 111, in the office of the clerk of the Jefferson county court. The deed set forth eight restrictive covenants that were applicable to the acreage conveyed, but those directly involved in this controversy are only the ones pertaining to "residential purposes". Eventually the Wests sold the remainder of their lands by two deeds dated October 20, 1943, and February 8, 1952. In both of these instruments there were provisions, in essence, that the tracts were conveyed subject to "restrictions and easements heretofore imposed", but no restrictions were in fact impressed upon the lands embraced in the two later conveyances.

In 1928 L. J. Wessel subdivided the 7.-635 acres into thirty-one building lots. This subdivision was designated as "Wessel Place" and a plat of it was recorded in July of 1928 in the aforesaid clerk's office. The subdivider subsequently executed nineteen conveyances, affecting twenty-four of these lots, and all of these contained language in substance that they were "made subject to existing restrictions of record".

On April 11, 1956, L. J. Wessel, he having been predeceased by his wife, conveyed all his interest in lots 13 through 19, the remaining seven lots of the subdivision and the subject-matter of this lawsuit, to his son, W. Ray Wessel, and his daughter, Estelle W. Vincent, plaintiffs herein. In this deed he specifically exempted, or at least attempted to exempt, these lots from any restrictions whatsoever. On February 27, 1957, Lula Swinney West and her husband, the original grantors of the 7.635 acres, executed a deed of release to plaintiffs, which purported to extinguish the restrictions contained in the deed from them to L. J. Wessel and wife dated June 27, 1927. In this conveyance the Wests stated the restrictions had been originally placed on the 7.635 acres to protect them in their possession and enjoyment of the remaining lands then held by them which they in the meantime had disposed of. Thereafter, ten lot owners representing seventeen of the twenty-four lots not owned by plaintiffs released as to their property the restrictions contained in the deed from the Wests to the Wessels. There are six remaining lot owners, defendants in this litigation, who are resisting plaintiffs' claim that lots 13 through 19 have never been restricted. Title to the remaining lot is in the heirs of two decedents and the

owners of it have interposed no defense herein.

This subdivision lies on the southerly side of Crums Lane, and its easternmost part is about a city block west of the Dixie Highway where the Seventh Street Road and the Eighteenth Street Road converge. The neighborhood adjoining the seven lots in question to the east and the area lying on the north side of Crums Lane have taken on a new look since the year 1927. As is shown by the photographic exhibits filed herein, the properties to the east and to the north have been improved with store buildings, office structures, a bowling alley, and an American Legion Post Clubhouse. Dolores Avenue, a street dedicated as a part of the plan of Wessel Place, separates the seven lots in question from the balance of the subdivision. These lots have all along remained vacant, while all of the construction on the remaining twenty-four lots has been residential in nature. This subdivision was planned strictly for residential purposes and no commercial development has taken place within the platted thirty-one lots.

The chancellor stated in his opinion that he could find no intention upon the part of either the Wests or the Wessels to impose any restrictions upon the seven lots as part of a general plan, because, as to the Wests, they never burdened any of their remaining land in like fashion when they ultimately disposed of it, and because, as to the Wessels, the deed affecting the seven lots executed to plaintiffs free of any servitudes indicated no uniform scheme of restrictions was contemplated for all the lots of the subdivision. It is our view this line of reasoning fails to take into account certain fundamental principles of law that are plainly applicable to the admitted facts of this case.

There are two sources from which the restrictions involved in this case derive: (a) From the deed by which the Wests conveyed the 7.635 acres to the Wessels on June 27, 1927; and (b) from the subsequent deeds executed by the Wessels to various purchasers of lots after the 7.635 acres were subdivided into the thirty-one lots that later became Wessel Place.

Conceivably, when the acreage that eventually became Wessel Place subdivision was first acquired, it could have been freed from any or all restrictive covenants which then adhered to it, provided a proper release to this effect could have been secured from the Wests and provided, further, this procedure antedated the subdivision of it and the sale of any lots therefrom by the Wessels. Up to this time, it could be said that the servitudes in force against this property were in a measure for the protection and enjoyment of the original grantors. However, the fact that all the restrictions imposed by the Wests were left attached to the acreage could only mean that the original parties expected these burdens to affect each portion of this tract when subdivided.

When L. J. Wessel subdivided the 7.635 acres into the thirty-one building lots and provided access streets for all of them; when, furthermore, he placed a plat of this subdivision on record and began selling off lots therefrom by reference to it; and when, finally, he inserted in all the twenty-four deeds executed by him and his wife the condition that such deeds were "made subject to existing restrictions of record", it may be positively asserted that newly-created restrictions were placed upon the subdivided property by the subdivider. After Wessel Place was brought into existence in the manner shown and lots were sold therefrom by the Wessels with restrictions attached to each of them by the overt act of the common grantors, it then passed beyond the power of the latter to revoke or in any way change the burdens affixed to any of the lots.

If the owner of two or more lots, so situated as to bear the relation to a general scheme of development, sells one with an easement of benefit to the land retained, the servitude becomes mutual, and, during the period of restraint, the owner of the lot or lots retained can do nothing

forbidden to the owner of the lot sold. For want of a better descriptive term this is styled a reciprocal negative easement. It runs with the land sold by virtue of the express burden placed upon it and abides with the land retained until loosened by expiration of its period of service or by events working its destruction. It is not personal to the owner but operative upon the use of the land by any owner having actual or constructive notice thereof. Sanborn v. McLean, 233 Mich. 227, 206 N.W. 496, 60 A.L.R. 1212. See also McFarland v. Hanley, Ky., 258 S.W.2d 3. Plaintiffs do not, nor could not, deny notice of the existence of the restrictions under discussion.

The intention to impose a general plan of development on a subdivision must be determined as of the time the subdivision was platted and lots were first sold therein. This statement appears in 14 Am.Jur., Covenants, Conditions and Restrictions, Section 202, page 613, and is pertinent: " * * * The most common test of the existence of a general building or neighborhood scheme is an intent that the protection of the restrictive agreements inure to the benefit of the purchasers of the lots in the tract. Such an intent is said to arise from representations as to the restrictions, made for the purpose of inducing the purchaser of the several lots to pay higher prices because of the restrictions."

It has been held that when the subdivider displayed a plat showing a building scheme for the entire subdivision to a buyer at the time of the negotiation of a lot sale, an intent to create a benefit appurtenant to the other lots in the subdivision can be conclusively presumed. See Tallmadge v. East River Bank, 26 N.Y. 105; Menstell v. Johnson, 125 Or. 150, 262 P. 853, 266 P. 891, 57 A.L.R. 311.

The original plan of the Wessels was, until the conveyance of the seven lots to plaintiffs, repeatedly declared in the sale of all lots by reference to "existing restrictions of record" in the deeds; and since 1928 the purchasers thereof, without exception, have observed the general scheme and purpose of the restrictions in building residences.

We therefore conclude that since a general design for Wessel Place has been established the plan and restrictions necessarily apply to the seven lots owned by plaintiffs. Because these restrictions were reciprocal and mutual they could not thereafter be abrogated by the whim of the common grantors.

Much space is devoted in plaintiffs' brief to the claim that such fundamental changes have taken place in close proximity to the seven lots in controversy as to neutralize the benefits of the restrictions requiring these lots to be devoted exclusively to residential purposes. It was disclosed by photographs that much commercial development has occurred in the immediate neighborhood since 1927. On the other hand, the record reveals there has been no change of condition in the subdivision; in fact, throughout Wessel Place firm adherence to all the restrictions has been maintained on all the previous lots sold. This Court has many times written that changes must take place in the subdivision and be acquiesced in by the property owners therein so as to render the changes permanent and to thereby materially curtail, if not destroy, the original purpose intended to be accomplished by any restriction imposed before a court of equity will declare the restriction unenforceable. See Cochran v. Long, Ky., 294 S.W.2d 503; Franklin v. Moats, Ky., 273 S.W.2d 812; Greer v. Bornstein, 246 Ky. 286, 54 S.W.2d 927, and Mechling v. Dawson, 234 Ky. 318, 28 S.W.2d 18. As there has been no deviation from the original plan of development, even of small consequence, within Wessel Place since it was formed, plaintiffs' claim that the restrictions under discussion have been neutralized is devoid of merit.

Wherefore, the judgment is reversed with directions that it be set aside and a new one entered in conformity with this opinion.