**KL & JL INVESTMENTS, INC., Appellant**

v.

**Donald W. LYNCH; Arthur B. Curry, James S. Shelton; Linda C. Lynch, Mary C. Young; Patricia Hobbs, Rebecca A. Massey; Renate B. Curry, Samuel J. Young and Virginia C. Fogle, Appellees**

NO. 2012–CA–001652–MR

Court of Appeals of Kentucky.

RENDERED: MARCH 27, 2015; 10:00 A.M.

As Modified April 17, 2015

Discretionary Review Denied by Supreme Court October 21, 2015

Brief for Appellant: Jerry Coleman, Elizabethtown, Kentucky.

Brief for Appellee: Kenton R. Smith, Brandenburg, Kentucky, Dawn Logsdon Johnson, Radcliff, Kentucky.

BEFORE: ACREE, CHIEF JUDGE; JONES AND VANMETER, JUDGES.

*OPINION*

JONES, JUDGE:

This appeal concerns a property dispute between the Appellant, KL & JL Investments Inc. ("KL & JL Investments"), and several other landowners in close proximity to KL & JL Investments' tract of land, the Appellees (hereinafter referred to as "the Property Owners").[1] On August 31, 2012, the Hardin Circuit Court ruled that the Property Owners could enforce a restrictive covenant limiting KL & JL Investments' development of the tract to a single-family residence. This appeal followed. For the reasons more fully explained below, we AFFIRM.

## I. Factual and Procedural Background

At one time, William and Eunice Montgomery owned all the land in question (hereinafter referred to as the "Parent Tract"). Sometime in the mid–1970s, the Montgomerys subdivided the Parent Tract. Around this time, William Montgomery prepared a drawing of the planned development; it depicts the Parent Tract being divided into twelve separate lots. This drawing was never recorded.

As planned, the Parent Tract was subdivided into twelve lots that were sold to various individual property owners. Eight of the twelve lots contained virtually identical deed restrictions. The relevant restrictions state:

(2) There shall be no more than one single-family residence and no multi-family residence placed upon the above described tract.

(3) Any residence erected upon the above described tract must contain at least 1,600 square feet excluding garages and porches and basements if a one-story residence and at least 1,200 square feet on the main floor, excluding garages and porches and basements, if a two-story residence.

(4) No imitation siding of any kind may be used upon the exterior of any residence or upon the exterior of any outbuilding erected upon the above described tract.

It is unclear from the record why the other four lots did not contain the restrictions. Nevertheless, to date, it appears that all of the lots have been developed in accordance with the restrictions.

On November 12, 2010, KL & JL Investments purchased one of the deed restricted lots. KL & JL Investments purchased the lot from Suzanne Weisshaupt for approximately $239,000. KL & JL Investments' lot is approximately five acres in size. Thereafter, KL & JL Investments obtained approval from the Vine Grove Planning and Zoning Commission to subdivide its lot into five separate one acre lots for the purpose of constructing a single-family home on each lot. KL & JL Investments planned to offer the homes for sale to the public. In furtherance of its future development plans, KL & JL Investments also obtained a release of the deed restrictions from Eunice Montgomery, the only surviving original grantor.

On June 1, 2011, the Property Owners filed a complaint in Hardin Circuit Court seeking a declaration that KL & JL Investments was bound by the restrictive covenants contained in its deed, and therefore, could not construct more than a single-family residence on its five acre lot. The Property Owners' lots were originally part of the Parent Tract and their chains

1. These individuals are: Donald W. Lynch, Author B. Curry, James S. Shelton, Linda C. Lynch, Mary C. Young, Patricia Hobbs, Rebecca A. Massey, Renate B. Curry, Samuel J. Young, and Virginia C. Fogle.

of title contain the same one house per lot restriction as contained in KL & JL Investments' chain of title.

Following a bench trial,[2] the Hardin Circuit Court charged KL & JL Investments with constructive notice of the restrictions. The circuit court determined that the restrictions, contained in a deed within KL & JL Investments' chain of title, were covenants running with the land. The circuit court also determined that the original grantor's purported release was ineffective because several property owners relied on the restrictions when purchasing their property. The circuit court reasoned:

> [t]he fact that the Montgomery's [sic] placed restrictions on eight out of the twelve tracts of land and the further fact that some of the [Property Owners] were shown the subdivision plat (which was not recorded) would indicate that the restrictions were intended for both the grantor and the purchasers of the other lots on the plat. It would appear that the restrictions were intended to run with the land which would confer on the [property owners] a right to enforce it. The [property owners] would have standing to seek enforcement of the restrictions. (see Bagby v. Stewart's Ex'r, 265 S.W.2d [75] (Ky.1954)).

As such, the circuit court concluded that the disputed property was subject to the restrictive covenants and enjoined KL & JL Investments from placing more than one residence on its lot.

This appeal followed.

## II. Standard of Review

Different standards of review apply depending on whether we are reviewing findings of fact or conclusions of law. A more deferential standard of review applies to the circuit court's factual findings than to its legal conclusions.

Our standard of review regarding the trial court's findings of fact is expressed in Kentucky Rule of Civil Procedure ("CR") 52.01, which directs that a trial court's factual findings "shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Id. A finding of fact is not clearly erroneous if it is supported by substantial evidence, which "means evidence of substance and relevant consequence having the fitness to induce conviction in the minds of reasonable men." Owens–Corning Fiberglas Corp. v. Golightly, 976 S.W.2d 409, 414 (Ky.1998).

We apply de novo review to the trial court's conclusions of law, including the "[i]nterpretation or construction of restrictive covenants." Colliver v. Stonewall Equestrian Estates Ass'n, Inc., 139 S.W.3d 521, 523 (Ky.App.2003). Under de novo review, we owe no deference to the trial court's application of the law to the established facts. Interactive Gaming Council v. Commonwealth ex rel. Brown, 425 S.W.3d 107, 111 (Ky.App.2014); Cinelli v. Ward, 997 S.W.2d 474, 476 (Ky.App.1998).

## III. Analysis

### A. Missing Record

As an initial matter, we must address one issue concerning the record on appeal. Both parties agree that the video record of the bench trial before the circuit court can no longer be located. KL & JL Investments asserts that the missing video record puts it at a disadvantage because "there is no way to quote testimony from witnesses or to direct the Court to legal

---

**2.** Unfortunately, the record from the circuit court's bench trial is missing. This issue is discussed in more detail below.

arguments made by the Appellant preserving issues for appeal." KL & JL Investments goes on to state that "the only option available at this point is to submit the Brief of the Appellant without the benefit of citations to the record."

We sympathize with the parties' frustration that the record has been lost through no fault of their own. However, we must point out that our Civil Rules are not without a remedy for such situations. In cases like the present, where there is no written or electronic record or where the record is insufficient, CR 75.13 does provide a remedy:

> (1) In the event no stenographic or electronic record of the evidence or proceedings at a hearing or trial was made or, if so, cannot be transcribed or are not clearly understandable from the tape or recording, the appellant may prepare a narrative statement thereof from the best available means, including his/her recollection, for use instead of a transcript or for use as a supplement to or in lieu of an insufficient electronic recording. This statement shall be served on the appellee, who may serve objections or proposed amendments thereto within 10 days after service upon him/her. Thereupon the statement, with the objections or proposed amendments, shall be submitted to the trial court for settlement and approval, and as settled and approved shall be included in the record on appeal.
>
> (2) By agreement of the parties a narrative statement of all or any part of the evidence or other proceedings at a hearing or trial may be substituted for or used in lieu of a stenographic transcript or an electronic recording.

*Id.*

Because KL & JL Investments did not avail itself of the remedy provided by CR 75.13, we must presume that any portion of the record not produced would support the circuit's court's decision. *See Harper v. Commonwealth,* 371 S.W.3d 763, 769 (Ky.App.2011) ("Ultimately, when the record is incomplete, we assume that the omitted record supports the decision of the trial court.").

### B. Mutually Enforceable Restrictive Covenant

■ Over the last century, Kentucky's treatment of restrictive covenants has evolved significantly. Previously, Kentucky took the view that restrictive covenants burdened the free alienation of property and construed them strictly; any doubt regarding the grantor's intent was resolved against the enforcement of such covenants. *See Glenmore Distilleries Co. v. Fiorella,* 273 Ky. 549, 117 S.W.2d 173, 176 (1938) ("It is said in substance that restrictive covenants on the use of property in derogation of the fee conveyed will not, by implication, be extended so as to include anything not clearly expressed; and in case of ambiguity or doubt, the intention of the party must be resolved in favor of the free and untrammeled use of the land."). Over time, however, Kentucky has abandoned the rule of strict construction of restrictive covenants. *See Highbaugh Enterprises Inc. v. Deatrick & James Const. Co.,* 554 S.W.2d 878, 879 (Ky.App.1977). Today, we view them, not as "restrictions on the use of property," which are generally disfavored, but as "a protection to the property owner and the public[.]" *Id.*

■ "The fundamental rule in construing restrictive covenants is that the intention of the parties governs." *Colliver,* 139 S.W.3d at 522. Thus, our primary task in deciding this appeal is to determine whether the restrictions were entered into for the purpose of the improvement or development of the real property or intended only to benefit the grantor. If the

former, the Property Owners have the right to enforce the restrictions against KL & JL Investments. *Black v. Birner,* 179 S.W.3d 873, 878 (Ky.App.2005). If the latter, only the grantor would have the right to do so and her release would be valid. *Id.*

"[I]n ascertaining whether a restrictive condition in a deed is inserted for the benefit of the grantor alone or is for the benefit of common grantees (and those who take under them) the intention of the parties is ascertained from the deed itself in the light of surrounding circumstances." *Brueggen v. Boehn,* 344 S.W.2d 404, 406 (Ky.1961). Additionally, we must consider "whether the covenant must affect or concern the land with which it runs, and whether privity of estate exists between the party claiming the benefit and the party who rests under the burden." *Oliver v. Schultz,* 885 S.W.2d 699, 700 (Ky. 1994).

We will first address the grantor's intent. As noted, we determine the grantor's intent from the deed itself as well as the surrounding circumstances. In this case, the deed is strong evidence in favor of the Property Owners' position. The original deed from the Montgomerys, which appears in KL & JL Investments' chain of title, states that the restrictions "shall run with the land." A declaration in the conveying instrument that restrictive covenants are to run with the land is "a significant factor" in determining that the grantor intended the restriction to benefit the land and not just his personal interests. *See McCown v. Gottlieb,* 465 So.2d 1120, 1123 (Ala.1985) (quoting *Wright v. Cypress Shores Development Co.,* 413 So.2d 1115, 1124 (Ala.1982), citing *Golian v. Polhironakis,* 390 So.2d 187 (Fla.Dist. Ct.App.1980)).

Whether "a general scheme and plan of a subdivision is present is [also] an important factor to consider in determining the purpose and intent of the restriction." *La Vielle v. Seay,* 412 S.W.2d 587, 592 (Ky.1966). "The question of the existence of a general plan is one of fact, to be determined with reference to the particulars and conditions of the laying out and sale of the lots...." *First Sec. Nat. Bank & Trust Co. of Lexington v. Peter,* 456 S.W.2d 46, 51–52 (Ky.1970).

The circuit court determined that the Montgomerys intended to create a subdivision subject to the restrictions contained in the deeds. In so finding, the circuit court relied upon: (1) the fact that Mr. Montgomery prepared a subdivision plat, which, although never recorded, was shown to some of the purchasers; (2) the Parent Tract was divided and sold as laid out in the subdivision plat; (3) some of the tracts containing the restrictions were not in close proximity to the Montgomerys' tract; and (4) all of the tracts were approximately four to five acres in size and had been developed per the restrictions.

Having reviewed the record before us, we believe that the circuit court considered the appropriate factors in deciding whether the restrictions were part of a general plan or scheme. Furthermore, we believe that substantial evidence supported the circuit court's factual determination that the Parent Tract was developed as part of this general plan. The only evidence in support of KL & JL Investments' position is that the restrictions were omitted from four of the twelve tracts. While this could suggest that the Montgomerys did not intend to develop a subdivision in conformity with the restrictions, it certainly does not compel such a finding. Therefore, we do not believe that circuit court erred where other equally compelling evidence suggested an intent to develop a uniform subdivision subject to the restrictions.

We next turn to the privity of estate requirement. Kentucky courts have held that the requisite privity of es-

tate necessary to establish a mutually restrictive covenant is met when a grantor-grantee relationship exists at the time the restriction is created. *Fishback v. Dozier*, 362 S.W.2d 490, 491 (Ky.1962). The record in this case establishes such a relationship existed when the Montgomerys originally transferred the tracts of land. Moreover, the Property Owners' and KL & JL Investments' direct chains of title can be traced back to a single piece of land owned by the Montgomerys.

■ Finally, we must determine whether the restrictions "touch and concern" the land. "A covenant touches and concerns the land if it affects the use, value, and enjoyment of the property." *Bank of America, N.A. v. Cannonball LLC*, 382 Ill.Dec. 562, 12 N.E.3d 841, 848 (Ill.App. 2 Dist.2014). Here by limiting the type and number of structures that can be erected on the property, the restrictions unquestionably affect the use, value, and enjoyment of the subject property. Thus, the last element is satisfied.

We believe that the Property Owners presented the circuit court with substantial evidence to support its conclusions that: 1) privity of estate exists; 2) the restrictions touch and concern the land; and 3) the original grantor included the restrictions as part of a general plan or scheme of development. Accordingly, we find no error on the part of the circuit court in concluding that the restrictions run with the land.

The Property Owners all have deeds containing the restrictions. Likewise, KL and JL Investments' deed contains the restrictions. Because the restrictions run with land, they may be enforced by subsequent grantees as against one another. *Humana, Inc. v. Metts*, 571 S.W.2d 622, 625–26 (Ky.App.1978). Thus, the Property Owners have standing to enforce the restrictions against KL and JL Investments. *See Foos v. Engle*, 295 Ky. 114,174 S.W.2d 5, 8 (1943) ("Where an owner of a tract of land subdivides it into building lots and sells parcels thereof to separate grantees, imposing restrictions in accordance with the general plan or scheme for uniform development, such restrictions inure to the benefit of the several grantees and may be enforced by one of the grantees against any other grantee."). Thus, we agree with the circuit court that the restrictive covenants created by William and Eunice Montgomery are enforceable by the Property Owners.[3]

[15] Likewise, because the restrictive covenants run with the land, the original grantor, who no longer owned any part of the original Parent Tract, could not release the restrictions to the detriment of the subsequent purchasers who relied on the restrictions contained in their chains of title. *Parrish v. Newbury*, 279 S.W.2d 229, 234 (Ky.1955) ("After the sale of lots, the original developers may not change the general scheme and plan of the development, even though it be indefinitely or ambiguously expressed in certain particulars, without the acquiescence of the owners of the lots."). Therefore, we also agree with the circuit court's conclusion that Eunice Montgomery's purported release of the restrictions was ineffective.

■ Finally, KL & JL Investments asserts that even if it is technically bound by

---

3. It is important to note that the restrictions appear in KL & JL Investments' direct chain to title as the lot it purchased was one of the eight lots that contain the restrictions. The result of this case might well be different if KL & JL Investments had purchased one of the four lots where the restrictions were omit-
ted from the deeds. *See Oliver v. Schultz*, 885 S.W.2d 699, 700 (Ky.1994) (holding that restriction placed in a collateral chain of title cannot bind a subsequent grantee without actual notice of the restriction unless it is included in a subsequent recorded subdivision plat or deed of restrictions).

restrictive covenants, it should be relieved of its duty to comply due to the "Change in Neighborhood" doctrine. KL & ·JL Investments argues that the circuit court erred by focusing primarily on the character of the original twelve lots without considering the nature of the many surrounding subdivisions. ·KL & ·JL Investments maintains that the Montgomerys at one time owned much of the additional neighboring land outside the twelve tracts ·of land. Thus, it contends that the circuit court should have considered changes beyond the twelve tracts.

Generally, the right to enforce a restrictive covenant may be lost by waiver, abandonment,. or by a general change in character of the neighborhood to which the covenant applied. *Bagby v. Stewart's Executor,* 265 S.W.2d 75, 77 (Ky.1954). "Kentucky law has long held that changes inside the subdivision which affect its residential character are necessary to vitiate a restrictive residential covenant in a deed." *Elliott v. Jefferson County· Fiscal Court,* 657 S.W.2d 237, 238 (Ky.1983). Further, "[t]he Kentucky rule recognizes that changes outside the subdivision are beyond the control of the lot owner." *Id.*

In *Greer v. Bornstein,* 246 Ky. 286, 54 S.W.2d 927, 930 (1932), the court considered whether the development of contiguous parts of a neighborhood should relieve a plaintiff from restrictions contained in her deed. It held that even though the plaintiff's lot might be affected to some degree by changes outside her immediate development, she could not rely on those changes to unburden her lot where there was no evidence that the character of the development itself had changed.

In this case the testimony shows that in remote but not immediately contiguous parts of the neighborhood of plaintiff's lot, some business enterprises have sprung up, and further east from her lot billboards are erected, but they are all some distance away from her lot, although their construction might tend to make her lot available for business purposes, and perhaps less valuable for residence purposes. However, such alterations and changes cannot be said to have such a fundamental effect as to entitle defendant to rely on this defense, even if · it could be made available· when the changes relied on were erected and constructed only on property adjacent to the development but not ·upon any part of it. ·

*Id.*

In this case, the circuit court examined the twelve tracts originally developed by the Montgomerys, all of which· have remained residential in nature and have adhered to the "one house per tract" restriction. Therefore, we find no error in the circuit court's conclusion that there was insufficient evidence of a change in condition sufficient to void the restrictions contained in KL & JL Investments' deed.

## IV. CONCLUSION

Accordingly, for the above stated reasons the judgment of the Hardin Circuit Court is AFFIRMED.

ALL CONCUR.