RENDERED: APRIL 1, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0171-MR

DAVID CIOCHETTY AND ROBIN
CIOCHETTY                                                                  APPELLANTS


                        APPEAL FROM WARREN CIRCUIT COURT
v.                      HONORABLE JOHN R. GRISE, JUDGE
                        ACTION NO. 18-CI-01397


FOUNTAIN TRACE HOMEOWNERS'
ASSOCIATION, INC. AND STEVE
NELSON, D/B/A PROVIDENCE
HOMES                                                                        APPELLEES

AND


NO. 2021-CA-0177-MR

STEVE NELSON, D/B/A
PROVIDENCE HOMES                                                             APPELLANT


                        APPEAL FROM WARREN CIRCUIT COURT
v.                      HONORABLE JOHN R. GRISE, JUDGE
                        ACTION NO. 18-CI-01397

FOUNTAIN TRACE HOMEOWNERS'
ASSOCIATION, INC.; DAVID
CIOCHETTY; AND ROBIN
CIOCHETTY                                                    APPELLEES

AND


NO. 2021-CA-0243-MR

FOUNTAIN TRACE HOMEOWNERS'
ASSOCIATION, INC.                                    CROSS-APPELLANT


CROSS-APPEAL FROM WARREN CIRCUIT COURT
v.          HONORABLE JOHN R. GRISE, JUDGE
            ACTION NO. 18-CI-01397


DAVID CIOCHETTY; ROBIN
CIOCHETTY; AND STEVE NELSON,
D/B/A PROVIDENCE HOMES                          CROSS-APPELLEES


OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE:  CALDWELL, GOODWINE, AND LAMBERT, JUDGES.

GOODWINE, JUDGE:  David and Robin Ciochetty ("the Ciochettys") appeal

from the September 13, 2019 and November 5, 2020 orders of the Warren Circuit

Court.  Steve Nelson, d/b/a Providence Homes ("Nelson") appeals from the same.

Fountain Trace Homeowners' Association, Inc. ("Fountain Trace") cross-appeals.

After careful review and consideration of the parties' oral arguments, we reverse

and remand for entry of an order consistent with this Opinion.

## BACKGROUND

The Ciochettys own property in the Fountain Trace subdivision in

Bowling Green, Kentucky. Properties in Fountain Trace are subject to various

deed restrictions. In 2018, the Ciochettys planned to construct an addition to their

home in Fountain Trace with Nelson acting as their contractor for the project. On

June 27, 2018, the Ciochettys sent Barry Cummings ("Cummings"), the Chairman

of the Fountain Trace Architectural Review Committee ("ARC"), an email stating

the following:

> I understand you are on the [ARC]. Attached is the exterior view of our addition to our house; we are adding bedrooms, and an office, and a garage, plus added a storage room and a laundry room (our existing one looks like a broom closet). Our builder is Steve Nelson of Providence Homes; he has been given a copy of the [Fountain Trace] restrictive covenants, plus the separate ones for Fountain Trace Estates. Exterior building materials will match the existing structure, adding approx. 3100 sq. feet. He is taking care of permits and inspections. I combined the lots into one soon after we moved in 2006.
>
> The existing structure on the exterior front view ends at the shuttered window; because of the length; we are adding a secondary front door, per fire code.

Record ("R.") at 333. Attached to the email was a one-page document depicting the front exterior of the addition. The image contained no notations as to the size, height, depth, elevation, or floorplan of the addition. No additional details, images, plans, or blueprints were attached to the email or given to the ARC at that time. Neither Cummings nor any other member of the ARC responded to the email.

Thereafter, Nelson commenced construction of the addition for the Ciochettys. On September 6, 2018, after construction had begun, Cummings sent the Ciochettys an email on behalf of the ARC demanding they cease construction because "the requisite plans and specifications have not been submitted for review to or approved by the Architectural Committee of Fountain Trace Homeowners Association, as required by Article III, Section One of the Declaration of Restrictive Covenants for Fountain Trace." *Id*. at 335. Cummings requested the Ciochettys send the ARC the relevant blueprints, elevations, and detailed specifications. On the same day, David Ciochetty responded to Cummings' email by sending him the blueprints for the addition to "satisfy the Article III provision." *Id*. at 336. Within his message, David also takes responsibility by stating, "this is my fault; go easy on our builders." *Id.* The blueprints provided detailed information regarding the proposed construction. In addition to having a second front entrance, the blueprints indicated the addition would contain a dining room, kitchen, family room, two master suites, an additional bedroom and bathroom, and

-4-

a laundry room, as well as a two-car garage, lawnmower garage, additional storage space, and two covered porches. The addition was planned to total 4,557 square feet.

After reviewing information and documentation provided by the Ciochettys and Nelson, the ARC declined the request for approval of the addition on September 14, 2018. The ARC determined the addition violated the neighborhood's restrictive covenants, including Article III, Section I,

> as they are not in harmony with the intended design of Fountain Trace Subdivision and Section II of Fountain Trace Subdivision, and are not in harmony with the external design and location in relation to the surrounding structures and topography. The proposed construction is also two houses and more than a single family dwelling, as prohibited by Article IV Section One of the Declaration of Restrictive Covenants of Fountain Trace[.]

*Id.* at 343. The Ciochettys were given thirty days to remove the partially-constructed addition from their property.

> Article III, Section I of Fountain Trace's restrictive covenants states
>
> No building, fence, wall, pool, or other structure (including a detached garage) shall be commenced, erected or maintained upon the Properties, nor shall any exterior addition to or change in alteration therein be made until the plans and specifications showing the nature, kind, shape, height, materials, and location of the same shall have been submitted to and approved in writing as to harmony of external design and location in relation to surrounding structures and topography by the Developer. The Developer shall, at its sole discretion, retain the right to disapprove building plans that it does not feel are in

harmony with the intended design of the Subdivision. Such disapproval may follow even though submitted plans meet all other requirements and guidelines, including square footage minimums, as outlined below. After Developer shall have conveyed title to all Lots, the architectural control shall be vested in the Association, or in an architectural committee composed of three (3) or more members of the association appointed by the Association. In the event said Developer, Association, or Association's designated committee, as the case may be, fails to approve or disapprove such design and location within thirty (30) days after said plans and specifications have been submitted to it, approval will not be required and the Article will be deemed to have been fully complied with. The Developer, or after the delivery of architectural control to the Association or its architectural committee, said Association or committee, may vary the established building lines, in its sole discretion, where such variance is not in conflict with applicable zoning regulations. No building shall be constructed except in accordance with the plans and specifications approved by the developer or the association.

*Id*. at 247-48.

The Ciochettys filed a complaint in the Warren Circuit Court seeking a declaratory judgment that they had complied with the neighborhood's restrictive covenants and were authorized to proceed with construction. Nelson later intervened in the lawsuit.

The parties filed cross-motions for partial summary judgment regarding whether the Ciochettys' June 27, 2018 email was an adequate submission to the ARC under Article III, Section I. In its September 13, 2019 order, the circuit court granted the Ciochettys' motion for partial summary

judgment, finding their email was "near the bare minimum of what [was] required to trigger a response" from the ARC. *Id*. at 356. In reference to the attached exterior drawing, the court found "[t]his attachment contained no scale as to the height of the addition. However, many details can be inferred from the exterior view because it shows a front door and the edge of the Ciochettys' existing house. For some reason unknown to this [c]ourt, the Ciochettys' chose not to send the builder's plans that they apparently then possessed." *Id*. at 349. The court further determined "[t]he plain meaning of 'plans and specifications' in the restrictive covenants required the Ciochettys disclose what they disclosed in the email to Mr. Cummings." *Id.* at 355-56. The court concluded that, while the Ciochettys could proceed with construction because the ARC failed to respond to their submission within thirty days, they were limited to building what was disclosed in the June 27, 2018 email. *Id.* at 356.

Thereafter, the parties attempted mediation and, when that was unsuccessful, the circuit court scheduled a hearing to determine whether the Ciochettys' addition, as it was constructed, was in conformity with the June 27, 2018 email and the court's prior order. The primary issue before the court was how "square footage" was defined and calculated under the restrictive covenants. The circuit court heard testimony from Cummings, the Ciochettys, and Liz Nelson, a representative of Providence Homes. The court permanently enjoined the

Ciochettys from constructing the addition as planned because it did not conform with the email. The court found the Ciochettys were limited to building 3,100 square feet in total and ordered the removal of a retaining wall they failed to disclose in their email. *Id*. at 497. The circuit court denied the Ciochettys' motion to alter, amend, or vacate the order.

This appeal followed.

## STANDARD OF REVIEW

"Because summary judgments involve no fact finding, this Court will review the [trial] court's decision *de novo*." *Isaacs v. Sentinal Insurance Company Limited*, 607 S.W.3d 678, 681 (Ky. 2020) (citation omitted). Summary judgment is appropriate only where, "as a matter of law, it appears that it would be impossible for the respondent to produce evidence at the trial warranting a judgment in his favor and against the movant." *Id*. at 680 (citation omitted). The record must be viewed in the light most favorable to the respondent with all doubts resolved in his favor. *Id.* at 680-81 (citation omitted).

We also review a trial court's interpretation of restrictive covenants *de novo*. *KL & JL Investments, Inc. v. Lynch*, 472 S.W.3d 540, 544 (Ky. App. 2015) (citation omitted). Under *de novo* review, we owe no deference to the trial court's interpretation. *Id*. (citations omitted).

-8-

# ANALYSIS

On appeal, the Ciochettys argue: (1) the circuit court erred in its interpretation of Article III, Section I of the restrictive covenants; (2) the circuit court incorrectly interpreted the definition of "square footage" as it relates to the addition; (3) the circuit court incorrectly found their addition did not conform with their June 27, 2018 email; and (4) the circuit court's permanent injunction was arbitrary and capricious. Nelson joins the Ciochettys in their arguments regarding the definition of "square footage" and the court's permanent injunction on construction of the addition. On cross-appeal, Fountain Trace argues, in part, the June 27, 2018 email was insufficient under Article III, Section I to require a response from the ARC.

We will first address whether the Ciochettys' June 27, 2018 email qualified as a submission under Article III, Section I necessitating a response from the ARC. This is an issue of construction of the restrictive covenants.

In the past, Kentucky courts strictly construed restrictive covenants, resolving any doubt as to the grantor's intent against the enforcement of the covenant. *KL & JL Investments*, 472 S.W.3d at 545 (citation omitted). However, this approach has evolved, and we no longer apply the rule of strict construction. *Id*. (citation omitted). We now view restrictive covenants as "protection[s] to the property owner and the public." *Id*. (citation omitted).

"[R]estrictive covenants are to be construed according to their plain language." *Hensley v. Gadd*, 560 S.W.3d 516, 521 (Ky. 2018). "Parties are bound by the clear meaning of the language used, the same as any other contract." *Id*. at 522 (citation omitted). Every part of the restrictive covenant, like any other instrument, shall be given meaning and effect when possible. *Id*. (citing *McFarland v. Hanley*, 258 S.W.2d 3, 5 (Ky. 1953)).

Where there is ambiguity, restrictive covenants must be construed according to the intention of the parties which can be ascertained from the context of the instrument. *Parrish v. Newbury*, 279 S.W.2d 229, 233 (Ky. 1955). "Often the surrounding circumstances and the object which the covenant was designed to accomplish, which may be revealed in part by a general scheme or plan of development, are important considerations where the meaning is doubtful." *Id.* However, where there is no ambiguity, courts cannot refashion the restriction to create ambiguity where none exists. *Hensley*, 560 S.W.3d at 522 (citation omitted).

We must first consider the plain meaning of the relevant terms used in Article III, Section I. The restriction, in pertinent part, states

> [n]o . . . structure . . . shall be commenced, erected, or maintained upon the Properties, nor shall any exterior addition to or change in alteration therein be made until *the plans and specifications showing the nature, kind, shape, height, materials, and location of the same* shall have been submitted to and approved in writing as to

-10-

> harmony of external design and location in relation to surrounding structures and topography by the Developer.

R. at 247 (emphasis added).   The circuit court's determination that "the plain meaning of 'plans and specifications' in the restrictive covenants required the Ciochettys disclose what they disclosed in the email" is insufficient.

Neither "plans" nor "specifications" are defined in Kentucky case law or Black's Law Dictionary.  The plain meaning of "plan" is "a drawing or diagram drawn on a plane: such as (a) a top or horizontal view of an object" or "(b) a large-scale map of a small area[.]"  *Plan*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/plan (last visited Feb. 1, 2022).  Furthermore, "specification" is defined as "a detailed precise presentation of something or of a plan or proposal for something – usually used in plural[.]"  *Specification*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/specification (last visited Feb. 1, 2022).  Most importantly, specification requires explicit and detailed statements.  *Specifying*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/specifying (last visited Feb. 1, 2022).

While the terms "plans" and "specifications" alone may appear vague as to the specific information required of submissions to the ARC, the remaining text of Article III, Section I provides clarity.  The section explains precisely what must be identified in writing by the party seeking approval from the ARC.  Such a

party must provide a drawing or diagram and detailed precise presentation of the structure's "nature, kind, shape, height, materials, and location." Taken together and giving the terms their plain meaning, there is no ambiguity as to the minimum requirements of Article III, Section I.

Herein, the Ciochettys' June 27, 2018 email fails to meet those minimum requirements. Neither the one-page drawing of the front exterior of the addition nor the text of the email included sufficiently detailed information. Most importantly, neither the email nor the attachment provided sufficient information as to the shape or height of the addition. The email also makes no mention of the retaining wall which was constructed as part of the addition. The Ciochettys themselves conceded that the June 27, 2018 email was lacking in specificity when they responded to Cummings' September 6, 2018 email by sending him the blueprints "to satisfy the Article III provision" of the restrictive covenants. R. at 336.

Because the Ciochettys' June 27, 2018 email did not meet the minimum requirements for submissions made under Article III, Section I, the ARC was not required to respond to their request. On this basis, the portion of Article III, Section I allowing a party to proceed with construction if no decision is made by the ARC within thirty days does not apply. The Ciochettys did not have authorization to begin construction. On remand, the circuit court shall enter an

-12-

order granting summary judgment in favor of Fountain Trace and permanently enjoining the Ciochettys from building the addition as currently designed. Nothing in this Opinion prohibits the Ciochettys from resubmitting modified plans and specifications to ARC for approval. Without approval, the addition must be removed in its entirety.

We note that best practice would be for the ARC to respond in a timely manner to any submission made by a resident regardless of the adequacy of the submission. Additionally, if the ARC does not respond to their submission, it would be prudent for the Ciochettys to follow up with ARC before making a substantial investment in a construction project without approval.

As our decision on the inadequacy of the Ciochettys' email submission is determinative of these appeals, we need not address the parties' remaining arguments.

## CONCLUSION

Based on the foregoing, we reverse and remand the September 13, 2019 and November 5, 2020 orders of the Warren Circuit Court for entry of orders consistent with this Opinion.

ALL CONCUR.

BRIEFS FOR APPELLANTS/
CROSS-APPELLEES DAVID &
ROBIN CIOCHETTY:

Matthew J. Baker
Bowling Green, Kentucky


BRIEFS FOR APPELLANT STEVE
NELSON D/B/A PROVIDENCE
HOMES:

David F. Broderick
R. Taylor Broderick
Bowling Green, Kentucky

ORAL ARGUMENT FOR
APPELLANT/CROSS-APPELLEES
DAVID & ROBIN CIOCHETTY:

Matthew J. Baker
Bowling Green, Kentucky

ORAL ARGUMENT FOR
APPELLANT STEVE NELSON
D/B/A/ PROVIDENCE HOMES:

Brandon T. Murley
Bowling Green, Kentucky

BRIEFS FOR APPELLEE/
CROSS-APPELLANT FOUNTAIN
TRACE HOMEOWNERS'
ASSOCIATION, INC.:

Tad T. Pardue
Ian A. Loos
Bowling Green, Kentucky


ORAL ARGUMENT FOR
APPELLEE/CROSS-APPELLANT
FOUNTAIN TRACE
HOMEOWNERS' ASSOCIATION,
INC.:

Ian A. Loos
Bowling Green, Kentucky