RENDERED: DECEMBER 15, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0902-MR

QUAST REAL ESTATE
DEVELOPMENT I, LLC                                        APPELLANT

                        APPEAL FROM KENTON CIRCUIT COURT
v.                      HONORABLE MARY K. MOLLOY, JUDGE
                        ACTION NO. 18-CI-01055

EAGLE DEVELOPMENT LLC;
INDUSTRIAL ROAD CENTER, LLC;
AND REMKE MARKETS, INC.                                   APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CALDWELL, GOODWINE, AND LAMBERT, JUDGES.

GOODWINE, JUDGE: Quast Real Estate Development I, LLC ("Quast") appeals

from an order of the Kenton Circuit Court granting summary judgment in favor of

Appellees Eagle Development LLC ("Eagle"); Industrial Road Center, LLC

("Industrial"); and Remke Markets, Inc. ("Remke Markets"). The circuit court

found Appellees proved all conditions to enforce a restrictive covenant that runs with the land purchased by Quast. We affirm.

**BACKGROUND**

The background of this case is complex and spans ten years, numerous parcels of land, and several property owners. This case arose because Quast knowingly purchased property subject to a restrictive covenant in 2017. Quast filed suit seeking to invalidate an exclusive use agreement ("EUA"), which was executed on April 6, 2007, by Eagle, Industrial, and Remke Markets.

Eagle and Industrial are separate companies both owned by Matthew Rumpke (who is not an owner of Remke Markets). Industrial owns the parcel, known as the Industrial Road property, on the west side of Turkeyfoot Road in Independence, where Remke Markets, a liquor store (also leased by Remke Markets), and CVS are located. Eagle formerly owned the property across Turkeyfoot Road, now known as the Quast property.

In 2007, Eagle sought to develop what is now the Quast property into a new shopping center and purchased adjoining parcels from several property owners. After completing a survey, Eagle learned that due to the relocation of Turkeyfoot Road, it was necessary to purchase a parcel owned by JASCRES Management, LLC, that spanned both sides of the new Turkeyfoot Road. The EUA came into existence because purchasing the JASCRES parcel was necessary

-2-

for access to what is now the Quast property and for Industrial to comply with leases, which were later assigned to it, for Remke Markets, the liquor store, and CVS.

On March 26, 2007, Eagle and Industrial entered into a purchase contract with Turkeyfoot Road, LLC; JACS Property, LLC; and JASCRES Management, LLC, all owned by Joe Schreiber, to acquire the small part of the Quast property needed for an entrance way across Industrial Road. Under the contract, three parcels were sold to Eagle and Industrial: (1) the parcel owned by Turkeyfoot Road, LLC, where Remke Markets is located, which was conveyed to Industrial; (2) an adjoining property owned by JACS Property, LLC, which was conveyed to Eagle; and (3) the property owned by JASCRES Management, LLC that was located on both sides of the new Turkeyfoot Road, which was conveyed to Eagle. Eagle purchased the land to access the Quast property in this transaction with the Schreiber companies. Industrial purchased what is now the Industrial Road property, where Remke Markets, the liquor store, and CVS are tenants.

At the time of the transactions, Schreiber had existing leases on the Turkeyfoot Road, LLC parcel (also known as the Industrial Road property) for Remke Markets, a liquor store, and a CVS. Each of those leases included restrictive covenants containing language nearly identical to the EUA. The purchase contract provided that Industrial would be assigned to those three leases.

The tenants would not agree to the assignment unless Eagle and Industrial agreed to the same terms, and the property across the road, now the Quast property, was also subject to these restrictions. The selling entities, all owned by Joe Schreiber, would not agree to the assignments of the leases or the sale of the parcels unless Eagle and Industrial agreed to the restrictions contained in the tenant's leases and that the restrictions would run with the land.

To meet these conditions, Eagle, Industrial, and Remke Markets executed the EUA on April 6, 2007, for the Quast property. The EUA provided that no grocery store, liquor store, or drug store may operate on the Quast property subject to certain exceptions: (1) a single building of up to 3850 square feet for use as a convenience store/gas station that may sell food, groceries, produce, dairy, beer, wine, or liquor; (2) the CVS located on the Industrial Road property may relocate to the Quast property and sell the same items; (3) a restaurant occupant may sell the restricted items as an incidental part of its principal business; (4) limited incidental sale of restricted items in any other building. In exchange, Remke Markets agreed not to permit any subtenant to violate the CVS restriction so long as it remained in effect, which prohibited using the Quast property as a drug store, health and beauty aid store, beauty supply store, or pharmacy. Further, the EUA provided that the sale of what is now the Quast property, including the properties owned by the Schreiber companies, was a condition precedent to the

EUA's effectiveness. Without the sale, the EUA would be null and void. The EUA was recorded in the Kenton County Clerk's Records.

On June 4, 2007, Eagle and Industrial closed on the Industrial Road property and part of what is now the Quast property from the Schreiber companies. On October 1, 2007, Eagle purchased additional parcels from other property owners, which are part of what is now the Quast property. Descriptions of the additional parcels are included in the EUA because Eagle was in negotiations to purchase them when the EUC was executed.

On December 29, 2010, Eagle sold what is now the Quast property to Lakeside Christian Church ("church"), subject to the restrictions in the EUA. In 2017, the church sold the property to Quast.

In addition to notice from the recording of the EUA, Quast had actual knowledge of the restrictive covenant when it bought the property. The church informed all prospective purchasers of the EUA and its restrictions encumbering the property. The purchase contract included an express acknowledgment of the EUA. Additionally, Quast's purchase price for the property was lower than it would have been without the use restrictions. The church sold the property to Quast for $2,000,000 in 2017, $200,000 less than it paid in 2010. Record ("R.") at 53.

Since the EUA became effective, the Quast property remains an empty lot.

On June 7, 2018, Quast filed a complaint in the Kenton Circuit Court to quiet title against Eagle, Industrial, and Remke Markets. On February 21, 2022, Quast moved for summary judgment against Appellees. On April 11, 2022, Appellees responded and filed a cross-motion for summary judgment against Quast.

On June 29, 2022, the circuit court denied Quast's motion for summary judgment and granted Appellees' cross-motion for summary judgment. The circuit court found the restrictive covenant in the EUA ran with the land, and the restrictions were reasonable and limited as to territory. This appeal followed.

On appeal, Quast argues the circuit court erred in: (1) finding Appellees intended for the restrictive covenant to run with the land; (2) finding there was privity of estate; (3) failing to consider the doctrine of changed conditions; and (4) finding the restrictive covenant was a reasonable restraint on trade.

## STANDARD OF REVIEW

To determine whether a restrictive covenant runs with the land, a circuit court must apply the following four criteria: (1) the intent of the parties; (2) whether the covenant touches and concerns the land; (3) whether privity

of estate exists; and (4) notice of the covenant. *KL & JL Investments, Inc. v. Lynch*, 472 S.W.3d 540, 545-46 (Ky. App. 2015). On appeal, we review Quast's arguments under the following standard:

> We apply *de novo* review to the trial court's conclusions of law, including the "[i]nterpretation or construction of restrictive covenants." *Colliver v. Stonewall Equestrian Estates Ass'n, Inc.*, 139 S.W.3d 521, 523 (Ky. App. 2003). Under *de novo* review, we owe no deference to the trial court's application of the law to the established facts. *Interactive Gaming Council v. Commonwealth ex rel. Brown*, 425 S.W.3d 107, 111 (Ky. App. 2014); *Cinelli v. Ward*, 997 S.W.2d 474, 476 (Ky. App. 1998).

*Id.* at 544.

## ANALYSIS

First, Quast argues the circuit court erred in finding Appellees intended for the restrictive covenant to run with the land. Under this argument, Quast raises three sub-issues: (a) the circuit court erred in considering a deed that was not in evidence in determining whether the restriction runs with the land; (b) the circuit court erred in finding the parties to the EUA intended for the restrictive covenant to apply to the Quast property because no chain of title was put in the record to establish all parcels comprising the Quast property were subject to the EUA; and (c) the parties to the EUA did not intend for the restrictive covenant to apply if Eagle or Industrial failed to construct a new shopping center on what is now the Quast property.

Quast's intent arguments are unpreserved. Based on our review of the record, Quast never raised any arguments regarding the intent for the EUA to run with the land in its complaint, motion for summary judgment, or any other pleading. Of the four elements required for a restrictive covenant to run with the land, Quast only contested privity of estate below. "It is axiomatic that a party may not raise an issue for the first time on appeal." *Sunrise Children's Services, Inc. v. Kentucky Unemployment Insurance Commission*, 515 S.W.3d 186, 192 (Ky. App. 2016).

Additionally, the EUA expressly provides: "These restrictions . . . shall run with the land and be binding on the Developer and their successors and assigns." R. at 45. The EUA further provides "'Developer' shall collectively mean Eagle and Industrial, their affiliates, subsidiaries, and any entities that in part or whole have common owners with Eagle and Industrial." *Id.* Thus, the circuit court correctly found the Appellees intended for the EUA to run with the land.

Second, Quast argues the circuit court erred in finding the restrictive covenant runs with the land because there was no privity of estate. Quast argues there is no privity of estate because the chain of title does not trace back to Remke Markets. We disagree with Quast's argument.

"Kentucky courts have held that the requisite privity of estate necessary to establish a mutually restrictive covenant is met when a grantor-

grantee relationship exists at the time the restriction is created." *Lynch*, 472 S.W.3d at 546-47.  Based on our review, this relationship existed when the restriction was created in the EUA.  As a condition precedent to the purchase of the properties, Schreiber required Eagle and Industrial to grant Remke Markets the exclusive right to operate a grocery store and liquor store on the Industrial Road property, where the leased stores are located, and to exclude the possibility of any grocery store or liquor store operating across the street on what is now the Quast property.  At the time the EUA was entered, Eagle and Industrial were the grantors of the exclusive rights to the grantee, Remke Markets.  In exchange for purchasing the parcels from Schreiber, Eagle and Industrial agreed to burden the land to benefit Industrial's lessee, Remke Markets.  Thus, the privity requirement was satisfied because the burden on what is now the Quast property traces back to Eagle.  Quast agreed to assume this burden in purchasing the land at a reduced price from the church.

Third, Quast argues the circuit court erred in failing to consider the doctrine of change in conditions.  Kentucky courts have long held:  "The general rule is that change of conditions will justify the court to relieve property from restrictive covenants when such change is so great as clearly to neutralize the benefit of the restrictions and to defeat the purpose of the covenant." *Robbins v. Cornell*, 311 S.W.2d 543, 546 (Ky. 1958).  In *Bewley v. Stieff*, 273 S.W.2d 833,

(Ky. 1954), the Supreme Court of Kentucky provided an example of when a change in conditions warrants a release from a restrictive covenant:

> It may be said to be the general rule that restrictive covenants against use of property by business enterprises will not be enforced where there has been a fundamental change in the character of the property or neighborhood from residential to business due to municipal expansion, spread of industry or other causes which have destroyed the residential character of the neighborhood and the enforcement would be oppressive and inequitable.

*Id.* at 834. This Court reiterated change in conditions rule in *Lynch*:

> Generally, the right to enforce a restrictive covenant may be lost by waiver, abandonment, or by a general change in character of the neighborhood to which the covenant applied. *Bagby v. Stewart's Executor*, 265 S.W.2d 75, 77 (Ky. 1954). "Kentucky law has long held that changes inside the subdivision which affect its residential character are necessary to vitiate a restrictive residential covenant in a deed." *Elliott v. Jefferson County Fiscal Court*, 657 S.W.2d 237, 238 (Ky. 1983). Further, "[t]he Kentucky rule recognizes that changes outside the subdivision are beyond the control of the lot owner." *Id.*

*Lynch*, 472 S.W.3d at 548.

As pointed out by Appellees, Quast presented no evidence that conditions have changed. When Eagle owned what is now the Quast property between 2007 and 2010, it did not develop a new shopping center as contemplated by the EUA. Industrial still owns the Industrial Road property, and Remke Markets still operates on that property. The benefit to Remke Markets still exists

-10-

though the Quast property remains undeveloped. Based on our review of the record, the character of the Turkeyfoot Road/Industrial Road area has not changed significantly since Appellees executed the EUA.

Quast further asserts the circuit court failed to address its change in conditions argument. Quast raised its change in conditions argument in its motion for summary judgment, but it did not file a Kentucky Rules of Civil Procedure ("CR") 52.02 motion for a ruling on this issue. Under CR 52.04, "A final judgment shall not be reversed or remanded because of the failure of the trial court to make a finding of fact on an issue essential to the judgment unless such failure is brought to the attention of the trial court by a written request for a finding on that issue or by a motion pursuant to Rule 52.02." Additionally, we review summary judgments *de novo*, and this Court determined there was no change in conditions to relieve Quast of the restrictive covenant. Thus, the circuit court did not commit reversible error in failing to address Quast's change in conditions argument.

Finally, Quast argues the circuit court erred in finding the restrictive covenant is a reasonable restraint on trade. Kentucky courts have long held that when "contracts in restraint of trade . . . are unlimited as to time but are confined to a reasonable territory they are enforceable." *Hammons v. Big Sandy Claims Service, Inc.*, 567 S.W.2d 313, 315 (Ky. App. 1978) (quoting Calhoun v. Everman, Ky., 242 S.W.2d 100 (1951)). Here, the EUA does not set a specific time

limitation, but the spatial limitation is clearly defined. The restrictive covenant only applies to the 30+ acre Quast property. Thus, the EUA does not restrict a grocery store, liquor store, or drug store from operating on any other commercial property in the Turkeyfoot Road area.

Additionally, "an agreement in restraint of trade is reasonable if . . . the restriction is such only as to afford fair protection to the interests of the covenantee and is not so large as to interfere with the public interests or impose undue hardship on the party restricted." *Id.* (citing *Ceresia v. Mitchell*, 242 S.W.2d 359 (Ky. 1951)). Here, the EUA does not interfere with public interests. The circuit court took judicial notice that "there are a handful of other grocery stores within just a few miles of the Quast property and the surrounding residential area." R. at 98-99. Additionally, the EUA contains clear exceptions, so the EUA does not impose any undue hardship on Quast especially when Quast was aware of the restrictions at the time of purchase. Thus, the circuit court correctly found the EUA is a reasonable restraint on trade.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the Kenton Circuit Court.

ALL CONCUR.

-12-

BRIEFS FOR APPELLANT:        BRIEF FOR APPELLEES:

Jack S. Gatlin                Donald C. Adams
Covington, Kentucky       James J. Englert
                                   Cincinnati, Ohio